**Dilcia Reyes De VALLE, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 88–7475.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 1989.

Decided April 23, 1990.

As Amended July 9, 1990.

---

Gregory S. Sergienko, Barrett, Hale & Gilman, Seattle, Wash., for petitioner.

Steven L. Barrios, Office of Immigration Litigation, Civil Div., Dept. of Justice, Washington, D.C., for respondent.

Before WALLACE and NELSON, Circuit Judges, and WILSON,* District Judge.

WALLACE, Circuit Judge:

De Valle petitions for review of the denial by the Board of Immigration Appeals (BIA) of her applications for asylum and withholding of deportation. The BIA had jurisdiction pursuant to 8 C.F.R. §§ 3.1(b)(2) and 242.21 (1989). We have jurisdiction over this timely petition pursuant to 8 U.S.C. § 1105a(a). We deny the petition.

I

De Valle is a citizen of El Salvador who entered the United States without inspection in March of 1984. Deportation proceedings were initiated against her on July 2, 1985. She conceded her deportability, but applied for asylum and withholding of deportation. The immigration judge (IJ) denied her application for relief. De Valle appealed to the BIA, which upheld the decision of the IJ.

De Valle's husband was a sergeant in the Salvadoran Army from 1975 to 1981. Mr. De Valle testified that in 1981, as a member of the Army, he was forced to participate in civilian massacres, though he stated that he himself did not shoot at any civilians. He also testified that in 1981 he was shot by assailants while in uniform, but off-duty. Mr. De Valle testified that he was ordered back to duty shortly after this shooting, but refused to go because he did not want to participate in further massacres and did not want to be shot. He then fled to the United States with his wife. After several attempts, the De Valles unlawfully entered the United States. Mrs. De Valle testified that she is afraid to return to El Salvador because of her husband's peril and because her uncle and his family were killed for unknown reasons in 1979.

II

Before reviewing the merits of De Valle's asylum and withholding claims, we address De Valle's contention that pursuant to 8 U.S.C. § 1158(c) her asylum claim should be treated the same as her husband's claim. That contention stems from a misreading of section 1158(c).

Section 1158(c) states that "[a] spouse ... of an alien *who is granted asylum* under subsection (a) of this section may, if not otherwise eligible for asylum under such subsection, be granted the same status as the alien if accompanying, or following to join, such alien." 8 U.S.C. § 1158(c) (emphasis added). We need look no further than the plain language of this statute to see that it does not pertain to the circumstances presented in this case. The terms of the statute apply only to the spouse of an alien "who is granted asylum." Mr. De Valle has not been granted asylum. Rather, the IJ denied his petition for asylum and his appeal to the BIA was held in abeyance while he pursued other relief. Since De Valle's claims are not legally coextensive with those of her husband, they must be analyzed on a wholly individualized basis.

III

Granting relief pursuant to section 1158(a) is within the discretion of the Attor-

---

* Honorable Stephen V. Wilson, United States District Judge, Central District of California, sitting by designation.

ney General. *INS v. Cardoza–Fonseca,* 480 U.S. 421, 428 n. 5, 107 S.Ct. 1207, 1211 n. 5, 94 L.Ed.2d 434 (1987). Consequently, we review the BIA's ultimate decision not to grant relief under that section for an abuse of discretion. *Bolanos–Hernandez v. INS,* 767 F.2d 1277, 1282 n. 9 (9th Cir. 1984) (*Bolanos–Hernandez*). We review "whether substantial evidence supports the BIA's determination that an alien has failed to prove a well-founded fear of persecution." *Sanchez–Trujillo v. INS,* 801 F.2d 1571, 1578 (9th Cir.1986) (*Sanchez–Trujillo*). "Under the deferential substantial evidence standard" employed in our circuit, "we may not reverse the BIA simply because we disagree with its evaluation of the facts, but only if we conclude that the BIA's evaluation is not supported by substantial evidence." *Diaz–Escobar v. INS,* 782 F.2d 1488, 1493 (9th Cir.1986) (*Diaz–Escobar*). If "[t]here is substantial evidence in the record to support the conclusion that [the petitioner] failed to establish an objectively reasonable fear or expectation of persecution," the petitioner will have "failed to establish that his fear was well-founded." *Id.* "All the substantial evidence standard requires is that the BIA's conclusion, based on the evidence presented, be substantially reasonable." *Id.*

### IV

■ Mrs. De Valle seeks political asylum and withholding of deportation pursuant to 8 U.S.C. §§ 1158(a) and 1253(h), respectively. To be entitled to asylum under section 1158(a), De Valle must first establish her status as "a refugee within the meaning of [8 U.S.C.] § 1101(a)(42)(A)." 8 U.S.C. § 1158(a). Refugee status is granted to those aliens who demonstrate "a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). In determining whether the "well-founded fear of persecution" standard has been met, we employ a two-part analysis: we must determine that the BIA's decision regarding whether "(1) the alien has a subjective fear, and (2) [whether] this fear has enough of

a[n] [objective] basis that it can be considered well-founded" is based upon substantial evidence. *Vilorio–Lopez v. INS,* 852 F.2d 1137, 1140 (9th Cir.1988) (*Vilorio–Lopez*). "The subjective component requires a showing that the alien's fear is genuine. The objective component requires a showing, by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear that the petitioner faces persecution." *Diaz–Escobar,* 782 F.2d at 1492; *see also Vilorio–Lopez,* 852 F.2d at 1140 ("The alien 'must present "specific facts" through objective evidence to prove either past persecution or "good reason" to fear future persecution.' "), *quoting Cardoza–Fonseca v. INS,* 767 F.2d 1448, 1453 (9th Cir.1985), *aff'd,* 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). "The petitioner need not show that his well-founded fear is 'more likely than not,' i.e., a 'clear probability.' The showing may be slightly less than such a probability, although it must be grounded in substantial record evidence." *Diaz–Escobar,* 782 F.2d at 1492 (citation omitted).

■ An alien's deportation may be withheld pursuant to 8 U.S.C. § 1253(h) if he can show a "clear probability of persecution." *Blanco–Lopez v. INS,* 858 F.2d 531, 533 (9th Cir.1988). To meet this burden, the alien must show that it is more likely than not that he will be persecuted if he is deported to his native country. *Id.* However, if the petitioner fails to demonstrate that he has a well-founded fear of persecution required for asylum under section 1158(a), "we will need to proceed no further because *a fortiori,* [the petitioner] would ... fail[ ] to meet the more stringent standard of clear probability of persecution." *Diaz–Escobar,* 782 F.2d at 1492. We therefore begin our analysis by reviewing De Valle's asylum claim.

### V

In order to qualify for asylum, De Valle must demonstrate that she is a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42)(A). 8 U.S.C. § 1158(a). A refugee is defined as "any person who is

outside any country of such person's nationality ... and who is unable or unwilling to return to ... that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *Sanchez–Trujillo,* 801 F.2d at 1578. De Valle argues that she possesses a "well-founded fear of persecution" which stems from an imputed political opinion and from her membership in a particular social group. We first address her claim that she has a well-founded fear of persecution based on an imputed political opinion.

### A.

De Valle's claim of asylum in fact rests on a doubly imputed political opinion. She claims that her husband will be imputed to have certain political opinions because of his desertion from the military and that she, in turn, will be imputed to hold those opinions because she is his wife. As we observed in *Bolanos–Hernandez,* 767 F.2d at 1287, asylum under section 1158(a) is generally available only to those aliens whose acts "constitute[ ] an *overt manifestation* of a political opinion." *Id.* (emphasis added). "Persecution *because of that overt manifestation* is persecution because of a political opinion." *Id.* (emphasis added).

 In De Valle's situation, "where the petitioner may not have overtly given any expression to [her] [political] opinions," she must at least demonstrate that there is a significant "relationship between victim and persecutor" and that she engaged in "sufficiently conscious and deliberate" decisions or acts which attributed certain political opinions to her, *Desir v. Ilchert,* 840 F.2d 723, 728 (9th Cir.1988), or else identify a " 'specific effort aimed at [her] in particular based on [her] political ... beliefs.' " *Sanchez–Trujillo,* 801 F.2d at 1581. De Valle has not overtly manifested a political opinion, nor has she engaged in conscious

or deliberate acts that would express a political opinion to a particular persecutor, nor has she identified an effort aimed *particularly at her* because of political opinions she purportedly holds. In short, because De Valle relies upon a doubly imputed political opinion in her claim for asylum, she has failed to make the individualized showing, required by the case law, that *she* will face persecution for holding a political opinion. As the BIA observed:

> Even if we take as true that [De Valle's] husband was forced to participate in 2 massacres of perhaps hundreds of civilians, and as a result deserted from the army over a year later, there has been *no showing as to how this relates to [De Valle].*

(Emphasis added.) In the absence of such an individualized showing, we do not conclude that refugee status exists. *See Mendez–Efrain v. INS,* 813 F.2d 279, 282 (9th Cir.1987) (holding that petitioner failed to establish refugee status where he had "not established an *individualized* ... well-founded fear of persecution") (emphasis added).

Moreover, there is not a sufficiently objective basis for concluding that De Valle or her husband would be imputed to hold political opinions that would make them susceptible to persecution. The BIA found that if Mr. De Valle were to return to El Salvador, although he "might face penalties for desertion and refusal to obey an order requiring him to report for active duty," there was no showing that he "would be singled out for any enhanced punishment or for any other reason than desertion." Thus, Mr. De Valle would face no persecution based on any political beliefs supposedly imputed to him because of his desertion from the army. If Mr. De Valle would not be imputed to hold such political opinions, *a fortiori* neither would his wife.

The BIA's decision on this issue was based upon a careful evaluation of the evidence contained in the record. While De Valle introduced some evidence into the record purporting to show that deserters are imputed to have political opinions sym-

pathetic to the guerrillas, the BIA concluded that this evidence was not "persuasive." The BIA's evaluation of the testimony of Mr. De Valle and Rev. Kempff and the declaration of Colonel Renee Francisco Guerra y Guerra was based largely on credibility. "[A]n IJ's credibility findings are granted substantial deference by reviewing courts," although "an IJ who rejects testimony for lack of credibility must offer a 'specific, cogent reason' for the rejection." *Vilorio–Lopez*, 852 F.2d at 1141, *quoting Turcios v. INS*, 821 F.2d 1396, 1399 (9th Cir.1987). Here, the BIA offered such a reason. Evaluating Mr. De Valle's testimony that he would be viewed as a guerrilla, the BIA observed that Mr. De Valle had testified that if he returned to El Salvador, he would have to report for military duty. The BIA reasoned that "[i]t doesn't seem logical that if the army truly viewed [Mr. De Valle] as a guerrilla due to his desertion, the army would desire to bring [him] back onto active duty." This inconsistency in Mr. De Valle's testimony also serves to undercut the persuasiveness of Rev. Kempff and Colonel Guerra y Guerra's assertions. Moreover, the BIA observed that punishment received for a breach of military discipline, such as desertion, is generally not viewed as political persecution, an observation which is supported by the law of our circuit. *See, e.g., Rodriguez–Rivera v. INS*, 848 F.2d 998, 1005 (9th Cir.1988) ("requiring military service does not constitute persecution"); *Espinoza–Martinez v. INS*, 754 F.2d 1536, 1540 (9th Cir.1985) (describing desertion as "nonpolitical").

Other evidence in the record was not indicative of persecution based on political opinion. The killing of De Valle's uncle's family disclosed no political motives. Similarly, the record does not demonstrate that the shooting of Mr. De Valle was politically motivated; indeed, the De Valles admitted that they did not know who the assailants were. Both the death of Mrs. De Valle's family members and the shooting of Mr. De Valle appear to have been " 'random occur[rences] indicative of the general upheaval in El Salvador.' " *Sanchez–Trujillo*, 801 F.2d at 1581, *quoting Florez–De-Solis v. INS*, 796 F.2d 330, 335 (9th Cir.

1986). Thus, De Valle has failed to show that the dangers she might face because of political opinions that might be imputed to her are "appreciably different from the dangers faced by [her] fellow citizens." *Sanchez–Trujillo*, 801 F.2d at 1579, *quoting Vides–Vides v. INS*, 783 F.2d 1463, 1469 (9th Cir.1986).

The BIA correctly determined that there did not exist any "credible, direct, and specific evidence in the record [ ] of facts that would support a reasonable fear that [De Valle] faces persecution" on the basis of imputed political opinions. *Diaz–Escobar*, 782 F.2d at 1492. Since we conclude that "[t]here is substantial evidence in the record to support the conclusion that [De Valle] failed to establish an objectively reasonable fear or expectation of persecution" based on her allegation of a doubly imputed political opinion, *id.* at 1493, we hold that the BIA's determination was "substantially reasonable." *Id.*

### B.

■ De Valle also argues that she is entitled to asylum relief under section 1158(a) because she faces persecution as a member of a social group, namely the social group consisting of family members of deserters who will be treated as guerrillas. As we discussed above, however, the BIA's determination that families of deserters will not necessarily be treated as guerrillas was based upon substantial evidence. De Valle's claim is thus reduced to one alleging membership in a social group consisting only of family members of deserters.

In *Sanchez–Trujillo*, we articulated a four-part test for "establish[ing] eligibility for relief premised upon group membership." 801 F.2d at 1574–75.

First, we must decide whether the class of people identified by the petitioners is cognizable as a "particular social group" under the immigration statutes. Second, the petitioners must have established that they qualify as members of the group. Third, it must be determined whether the purported "social group" has in fact been targeted for persecution

on account of the characteristics of the group members. Finally, we must consider whether such "special circumstances" are present to warrant us in regarding mere membership in that "social group" as constituting per se eligibility for asylum or prohibition of deportation.

*Id.* (citations and footnotes omitted).

The purported "social group" in which De Valle claims membership fails to meet even the first part of this test. In discussing the requirements that one must fulfill in order to meet the first part of this test, we stated that

the phrase *"particular social* group" implies a collection of people closely affiliated with each other, who are actuated by some common impulse or interest. Of central concern is the existence of a voluntary associational relationship among the purported members, which imparts some common characteristic that is fundamental to their identity as a member of that discrete social group.

*Id.* at 1576 (footnote omitted). The social group in which De Valle claims membership—families of deserters—is by no means closely affiliated or discrete. While there may be some common impulse or interest that, at a high level of generality, ties the families of deserters together, the differences between such families far outweigh the similarities.

Indeed, the social group in which De Valle claims membership is closely akin to the one we considered in *Sanchez–Trujillo.* In that case, we analyzed whether a class of "young, urban, working class males of military age who have never served in the military or otherwise expressed support for the government," could be considered a "social group" under the terms of the statute. *Id.* at 1574. We concluded that such a group "does not exemplify the type of 'social group' for which the immigration laws provide protection from persecution" because "[i]ndividuals falling within the parameters of this sweeping demographic division naturally manifest a plethora of different lifestyles, varying interests, diverse cultures, and contrary political leanings." *Id.* at 1576–77. Family members of desert-

ers, like young urban males, are also a diverse, fragmented segment of the population. As we have stated before, "[m]ajor segments of the population of an embattled nation, even though undoubtedly at some risk from general political violence, will rarely, if ever, constitute a distinct 'social group' for the purposes of establishing refugee status." *Id.* at 1577.

We hold that family members of deserters do not constitute a social group within the meaning of 8 U.S.C. § 1101(a)(42)(A). The BIA's determination that De Valle lacked membership in a social group for purposes of the statute was therefore "substantially reasonable." *Diaz–Escobar,* 782 F.2d at 1493.

Since "[t]here is substantial evidence in the record to support the conclusion that [De Valle] failed to establish an objectively reasonable fear or expectation of persecution" based upon political opinion or her membership in a purported social class, we need not examine her subjective fears. *Id.* In addition, since De Valle has failed to demonstrate a "well-founded fear of persecution," she *"a fortiori"* has failed to meet the more stringent standard required for withholding of deportation. *Id.* at 1492.

We conclude that the BIA did not abuse its discretion in denying De Valle relief.

PETITION DENIED.