952 F.2d 407
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Olga Maria MORALES-CANELO, Petitioner,
v.
U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 91-70108.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 12, 1991.*
Decided Dec. 17, 1991.
 
 Before HUG, CYNTHIA HOLCOMB HALL and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Olga Morales-Canelo ("Morales") petitions for review of a decision of the Board of Immigration Appeals ("BIA") denying her application for asylum and for withholding of deportation.
 
 
 3
 * Morales, a native and citizen of Nicaragua, entered the United States without inspection near Brownsville, Texas, in 1984. She was apprehended by immigration authorities the next day, and ordered to show cause why she should not be deported. Morales conceded deportability and, through an attorney, requested that her immigration hearing be held in San Francisco rather than Texas. [AR 190] Morales appeared with counsel for her San Francisco deportation hearing on January 6, 1986. She requested additional time to prepare applications for political asylum and withholding of deportation pursuant to 8 U.S.C. sections 1158(a) and 1253(h). A hearing on these applications was set for May 26, 1987. [AR 123-125]
 
 
 4
 Morales appeared at the merits hearing without counsel. In response to an inquiry by the immigration judge, she stated that she could not afford an attorney and had not been given a list of free legal services. The immigration judge informed Morales that free legal services were available, and twice asked her if she wished to proceed without an attorney. Morales indicated that she did, stating through an interpreter, "I know what the procedures are and I could answer for myself." [AR 129]
 
 
 5
 Morales introduced evidence that she was a long-time member of a political party opposed to the Sandinistas, and that she had refused to join a neighborhood Sandinista Defense Committee. As a result, she testified, she had been accused of being a collaborator and her name had been posted on a list of collaborators. [AR 139] In 1980, when Fidel Castro visited Nicaragua, she was ordered confined to her home for four days, but she was away in Managua at the time. [AR 140-41] In August 1984, when she left Nicaragua, she was able to obtain an exit visa and passport without difficulty. [AR 144] In support of her application, Morales produced photographs, taken after her arrival in the United States, of herself with leaders of the anti-Sandinista Conservative Party. [AR 150-154] She also submitted three letters signed by leaders of the anti-Sandinista resistance, stating that they believed she would be in danger if she returned to Nicaragua. [AR 195-200]
 
 
 6
 The immigration judge denied Morales' requests for asylum and withholding of deportation. He found that Morales had never been harmed or threatened with physical harm, and that no official action had been taken against her by the Sandinistas. [AR 118, 120] He concluded that Morales had not established a well-founded fear of persecution due to her political views. [AR 121]
 
 
 7
 The BIA affirmed. The BIA found that the record demonstrated that Morales had been properly advised of her rights and had knowingly and voluntarily waived her right to counsel. [AR 5] The BIA also found that, due to the intervening change of government in Nicaragua, Morales did not have a well-founded fear of persecution. [AR 5] Even if Morales had been eligible for a grant of asylum, the BIA determined that she did not merit one. [AR 6] Morales timely appealed to this court.
 
 II
 
 8
 Morales first argues that she was denied her right to counsel at the immigration hearing. Aliens have a statutory right to retained counsel at deportation hearings and associated asylum hearings. 8 U.S.C. § 1362 (1988); Rios-Berrios v. INS, 776 F.2d 859, 862 (9th Cir.1985). Denial of this statutory right may, if sufficiently prejudicial, amount to violation of the constitutional right to a full and fair hearing. Castro-O'Ryan v. Department of Immigration & Naturalization, 847 F.2d 1307, 1313 (9th Cir.1988). An alien may waive the right to counsel, provided that waiver is knowing, intelligent, and voluntary. Ramirez v. INS, 550 F.2d 560, 565 (9th Cir.1977).
 
 
 9
 Morales effectively waived her right to counsel. The immigration judge explained to her that she had a right to representation, and that free legal services were available. He then asked her if she wished to proceed "with an attorney or without" one, and she answered that she knew the procedures and "could answer for [her]self." The immigration judge went on to carefully explain the hearing procedures to Morales, including her right to testify, to call witnesses, to cross-examine government witnesses, and to review any documentation submitted by the government. [AR 129-130] In the face of Morales' voluntary, knowing, and intelligent waiver of her right to counsel, the immigration judge was not required sua sponte to order a continuance for the purpose of allowing Morales to obtain counsel.
 
 III
 
 10
 Morales next claims that she has established a clear probability of persecution such that deportation must be withheld under 8 U.S.C. § 1253(h)(1). Alternatively, she contends that she has established her eligibility for asylum under 8 U.S.C. § 1158(a) by demonstrating a well-founded fear of persecution.
 
 
 11
 To be entitled to mandatory withholding of deportation, an alien must show that persecution is more likely than not. INS v. Stevic, 467 U.S. 407, 429-30 (1984); Barraza Rivera v. INS, 913 F.2d 1443, 1449 (9th Cir.1990). Eligibility for asylum can be established by meeting the less stringent test of demonstrating a well-founded fear of persecution. Arteaga v. INS, 836 F.2d 1227, 1228-29 (9th Cir.1988); see generally INS v. Cardoza-Fonseca, 480 U.S. 421 (1987). A well-founded fear must be both subjectively and objectively reasonable. Arriaga-Barrientos v. INS, 937 F.2d 411, 413 (9th Cir.1991).
 
 
 12
 Substantial evidence supports the BIA's conclusion that Morales did not show either a clear probability or a well-founded fear of persecution. Although Morales testified that she had been accused of collaborating with the Contras by the Sandinista Defense Committees, she did not cite any instance where she, or any acquaintance or family member, had been physically harmed or threatened with physical harm. She had never been detained by the Sandinistas, despite her testimony that they had ordered her confined to her home for four days in 1980. There was no evidence of economic persecution directed at Morales.
 
 
 13
 Even if Morales had demonstrated a well-founded fear of persecution, the BIA ruled that she did not merit a grant of asylum. [AR 7] The decision to grant or deny asylum to an eligible alien is within the agency's discretion. INS v. Cardoza-Fonseca, 480 U.S. 421, 428 n. 5 (1987); DeValle v. INS, 901 F.2d 787, 789-90 (9th Cir.1990). We cannot say that the agency has abused that discretion here.
 
 
 14
 Morales' assertion that the BIA failed to adequately consider evidence of past persecution, as required by Matter of Chen, Interim Decision # 3104 (1989), is not persuasive. In Chen, the BIA held that, where an alien or his family has, in the past, suffered "atrocious forms of persecution," a grant of asylum may be appropriate "even if there is no likelihood of future persecution." Id., slip op. at 5.
 
 
 15
 Chen and his family had been persecuted during the Chinese Cultural Revolution. Chen's father was dragged repeatedly through the streets, forced to write daily confessions, and pushed into a bonfire of burning Bibles. Id. at 6. Chen himself was locked in a room with his grandmother for six months, interrogated continually, and physically mistreated. Id. He was then sent to a re-education camp for several years and, on his release, lived in complete social isolation. Id. at 6-7. Because of this past persecution, and Chen's resulting fear of repatriation, the BIA determined humanitarian considerations warranted a discretionary grant of asylum, despite changed political circumstances that made future persecution of Chen unlikely. Id. at 7.
 
 
 16
 Morales' claims do not approach the level of mistreatment that led to the decision to grant asylum in Chen. On the record before us, we cannot say that the BIA abused its discretion in determining that Morales did not merit a grant of asylum.
 
 V
 
 17
 Finally, Morales contends that the BIA improperly took administrative notice of the change of government in Nicaragua. Morales alleges that the Sandinistas continue to control the Nicaraguan army and police and that the new regime cannot assure the safety of those associated with the Contras.
 
 
 18
 We need not determine whether administrative notice was properly taken, because the noticed facts were irrelevant to the resolution of Morales' applications. The BIA determined that Morales did not have a well-founded fear of persecution at the hands of the Sandinistas, and that asylum was not appropriate. We have already upheld these determinations, which do not depend on the change of government in Nicaragua. Accordingly, even if we could consider new evidence not first presented to the BIA by way of a motion to reopen, see Rogue-Carranza v. INS, 778 F.2d 1373 (9th Cir.1985), the evidence submitted by Morales does not undermine the BIA decision.
 
 VI
 
 19
 For the reasons noted above, the decision of the Board of Immigration Appeals is AFFIRMED, and the petition for review is DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit R. 36-3