**Olga Nubia Ceja DE BROWN,
Petitioner–Appellant,**

v.

**DEPARTMENT OF JUSTICE; Immigration and Naturalization Service; Board of Immigration Appeal, Respondents–Appellees.**

No. 93–15657.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 14, 1993.

Decided March 9, 1994.

Marshall G. Whitehead, Phoenix, Arizona, for the petitioner-appellant.

John B. Barkley, Special Assistant United States Attorney, Immigration and Naturalization Service, Phoenix, Arizona, for the respondents-appellees.

Before: WALLACE, Chief Judge,
GARTH* and WIGGINS, Circuit Judges.

WALLACE, Chief Judge:

De Brown appeals from the judgment of the district court denying her habeas corpus petition challenging the Board of Immigration Appeal's (Board) order finding that she was not a native born United States citizen and excluding her. The district court had jurisdiction pursuant to 28 U.S.C. § 2241 and 8 U.S.C. § 1105a(b). We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 2253. We affirm.

I

De Brown attempted to gain entry to the United States from Mexico by presenting a birth certificate that she claimed was issued by the State of California. The Immigration and Naturalization Service (INS) was not satisfied with the authenticity of the certificate and subsequently initiated exclusion proceedings pursuant to 8 U.S.C. § 1182(a)(20).

At the exclusion hearing, to support her claim of birth in the United States, De Brown presented a copy—not an original—of an uncertified California birth certificate, the live testimony of her mother, and affidavits from two people who asserted they witnessed or knew of the birth. Contradicting her claim of United States birth was a certified Mexican birth certificate and a Certification of No Record issued by the State of Califor-

nia reflecting that no record of her birth was found.

The immigration judge ordered her excluded because she did not establish by "clear and convincing evidence" that she was born in the United States. On its de novo review, the Board affirmed the immigration judge's order, correcting the immigration judge's application of the incorrect burden of proof. The Board held that De Brown had not established her citizenship "by a preponderance of the evidence."

In her habeas corpus petition to the district court, De Brown sought a de novo hearing on her claim of citizenship at which she proposed to bring witnesses from Mexico. The district court held that it lacked jurisdiction to conduct a de novo hearing as part of its habeas corpus review of the exclusion order. Under its more limited scope of review, the district court upheld the Board's decision.

We review de novo whether the district court could conduct a de novo hearing. *See Xiao v. Barr,* 979 F.2d 151, 153 (9th Cir.1992) (reviewing de novo whether district court had subject matter jurisdiction to place alien in exclusion proceedings). We also review de novo the district court's dismissal of the habeas corpus petition. *Alvarez–Mendez v. Stock,* 941 F.2d 956, 959 (9th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992).

II

De Brown presents two separate arguments for why the district court should conduct a de novo hearing. First, she argues that the proceeding in the district court could have been brought under the Declaratory Judgments Act, 28 U.S.C. § 2201, under which a district court is not confined to the administrative record as it is under 8 U.S.C. § 1105a(a)(4) of the Immigration and Nationality Act (Act).

■ The district court correctly rejected her argument because review of exclusion

---

* Honorable Leonard I. Garth, United States Circuit Judge, Third Circuit Court of Appeals, sitting by designation.

orders are expressly excluded from the scope of the district court's jurisdiction under the Declaratory Judgments Act. A person within the United States may institute an action under the Declaratory Judgments Act for a declaration that he or she is a national "except that no such action may be instituted in any case if the issue of such person's status as a national ... arose by reason of, or in connection with any exclusion proceeding ...." 8 U.S.C. § 1503(a).

Second, De Brown argues that the district court should have employed special procedures in its review of the Board's exclusion order because a claim of nationality was involved. She bases her argument on the de novo review given to claims of nationality in 8 U.S.C. § 1105a(a)(5). Our review of the Act and the relevant case law convinces us that claims of nationality are given special treatment when they arise in deportation proceedings, but not in exclusion proceedings.

■ The section of the Act that deals with judicial review of deportation and exclusion orders, 8 U.S.C. § 1105a, gives a detailed explanation of when a court reviewing a deportation order is confined to the administrative record. Normally, "the petition shall be determined solely upon the administrative record upon which the deportation order is based." 8 U.S.C. § 1105a(a)(4). The only exception applies "whenever any petitioner, ... claims to be a national of the United States and makes a showing that his claim is not frivolous, ...." 8 U.S.C. § 1105a(a)(5). When a petitioner presents a genuine issue of material fact regarding such a claim of nationality, the court of appeals reviewing the Board's order must transfer the claim to the district court for a de novo hearing. *Agosto v. INS*, 436 U.S. 748, 754, 98 S.Ct. 2081, 2086, 56 L.Ed.2d 677 (1978) (*Agosto* ). Such a hearing is conducted in the district court as if brought under the Declaratory Judgments Act. 8 U.S.C. § 1105a(a)(5)(B).

■ The Act does not state whether courts reviewing exclusion orders are to be confined to the administrative record as they are in their review of deportation orders. Nor does the Act state whether claims of nationality arising in exclusion proceedings are subject to the mandatory de novo hear-

ings in the district court provided for in 8 U.S.C. § 1105a(a)(5). Rather, the Act provides that "[n]otwithstanding the provisions of any other law, any alien against whom a final order of exclusion has been made ... may obtain judicial review of such order by habeas corpus and not otherwise." 8 U.S.C. § 1105a(b).

We now turn to the structure of the Act, its legislative history, and the status accorded exclusion orders by the Supreme Court to determine whether the provision for mandatory de novo hearings in the district court applies only to deportation cases.

We first examine several aspects of the Act itself which inform our decision. First, 8 U.S.C. § 1105a(a)(5) sets up a procedure for mandatory transfer of a nationality claim from the court of appeals to the district court that, as a practical matter, could not apply to many nationality claims arising in exclusion proceedings. Exclusion orders can be reviewed only through habeas corpus petitions, which may be filed in the district court, unlike petitions for review of deportation orders which must be filed in the court of appeals. In many cases, there could be no *transfer* to the district court of a claim of nationality arising in an exclusion proceeding because the nationality claim would already be in the district court where the habeas petition was filed.

Second, after a mandatory transfer to the district court for a de novo hearing, the district court is required to treat the claim as if it was brought under the Declaratory Judgments Act. However, as discussed above, a portion of the Act, 8 U.S.C. § 1503(a), expressly excepts nationality claims arising in exclusion proceedings from jurisdiction under the Declaratory Judgments Act. The prohibition in 8 U.S.C. § 1503(a) would be eliminated if we were to allow the district court to transform any habeas review of an exclusion order into an action identical to an action brought under the Declaratory Judgments Act solely by virtue of the special treatment given to nationality claims in 8 U.S.C. § 1105a(a)(5).

Third, the language of the Act establishes a completely separate procedure to govern

judicial review of exclusion proceedings, "[n]otwithstanding the provisions of any other law, ..." 8 U.S.C. § 1105a(b). This language separates review of exclusion proceedings from the procedures provided for review of deportations proceedings, including the procedure of giving de novo review to nationality claims.

The lesser review given to a nationality claim solely because it arises in an exclusion rather than a deportation proceeding is consistent with the treatment of exclusion proceedings by the Supreme Court. *Landon v. Plasencia*, 459 U.S. 21, 26–27, 103 S.Ct. 321, 325–26, 74 L.Ed.2d 21 (1982), points out that participants in exclusion proceedings are entitled to fewer procedural protections and substantive rights than participants in deportation proceedings. In addition, in precedent nearly a century old, the Supreme Court held that under the immigration statute in effect at the time, excluded aliens who claimed to be born in the United States were not entitled to de novo citizenship hearings in the district court if they received a fair hearing before the agency. The absence of a de novo hearing in an exclusion case presenting claims of nationality was not contrary to constitutional guarantees of due process. *Tang Tun v. Edsell*, 223 U.S. 673, 675, 681–82, 32 S.Ct. 359, 363–64, 56 L.Ed. 606 (1912). Finally, the Supreme Court has observed that Congress provided for the de novo review of claims of citizenship in 8 U.S.C. § 1105a(a)(5) because of decisions of the Court requiring "that there be some provision for *de novo* judicial determination of claims to American citizenship in deportation proceedings." *Agosto*, 436 U.S. at 753, 98 S.Ct. at 2085. In contrast, as discussed above, there is no constitutional requirement of a de novo hearing in exclusion cases.

Further, the legislative history of 8 U.S.C. § 1105a states that the scope of judicial review already available in habeas corpus proceedings will be adequate to test an alien's eligibility for entry, indicating that Congress intended to maintain the scope of habeas corpus review available at the time the statute was enacted. H.R.Rep. No. 1086, 87th Cong., 1st Sess., (1961), *reprinted in* 1961 U.S.C.C.A.N. 2950, 2974–75. To establish

the scope of habeas corpus review available to excluded aliens at the time that the statute was enacted, the House Report cites *Kwock Jan Fat v. White*, 253 U.S. 454, 40 S.Ct. 566, 64 L.Ed. 1010 (1920), an exclusion case raising a claim of United States birth. 1961 U.S.C.C.A.N. at 2976. *Kwock Jan Fat* states that an agency decision is

> conclusive upon the courts, unless it be shown that the proceedings were manifestly unfair, were such as to prevent a fair investigation, or show manifest abuse of the discretion committed to the executive officers by the statute.... The decision must be after a hearing in good faith ... and it must find adequate support in the evidence.

*Id.* at 457–58, 40 S.Ct. at 567–68 (internal quotations and citations omitted). This scope of review is consistent with our more recent statements in *Alvarez v. District Director of INS*, 539 F.2d 1220 (9th Cir.1976), *cert. denied*, 430 U.S. 918, 97 S.Ct. 1334, 51 L.Ed.2d 597 (1977). There we inquired whether the Board's findings of fact were supported by substantial evidence and we reviewed the Board's decision "to insure that [it] was not arbitrary, capricious, or contrary to law and was reached with proper regard for procedural requirements." *Id.* at 1225.

Thus, the district court in this case properly declined to conduct a de novo hearing. Instead, its review was limited to whether the Board's findings of fact were supported by substantial evidence and whether the Board's decision was arbitrary, capricious, an abuse of discretion, or contrary to law.

### III

■ In our de novo review of the district court, we agree with the district court that the Board's finding that De Brown was not born in the United States is supported by substantial evidence. The existence of the Mexican birth certificate and the fact that no record of her birth was found in California records substantially supports the Board's finding that De Brown failed to establish her United States birth by a preponderance of the evidence.

■ Further, the Board did not abuse its discretion in correcting the immigration judge's application of an erroneous burden of proof. We have previously held that because the Board has the power to conduct a de novo review of the record, no error occurs when it corrects the legal standard applied by the immigration judge. *Elnager v. U.S. INS*, 930 F.2d 784, 787 (9th Cir.1991). In addition, as in *Elnager*, the Board had before it a sufficient record on which to conduct a de novo review of the facts and apply the correct legal standard.

■ De Brown also argues that the district court should have granted her petition because the immigration judge relied on an impermissible factor in deciding to discount the credibility of the affidavit of the witness who claimed to be present at De Brown's birth. Although we review the decision of the Board, not the immigration judge, *id.*, we are informed in our review by looking at the immigration judge's statements here, because the Board in its de novo review stated that it discounted the affidavit in part for the reasons stated by the immigration judge. We review credibility findings for substantial evidence. *Vilorio–Lopez v. INS*, 852 F.2d 1137, 1141 (9th Cir.1988). Rejection of testimony for lack of credibility must be accompanied by a "specific cogent reason for the rejection." *DeValle v. INS*, 901 F.2d 787, 792 (9th Cir.1990) (internal quotes omitted).

Among the reasons that the immigration judge decided to discount the testimony in the affidavit was his doubt about the plausibility of the events related. The affiant stated that as a young girl of 10 or 12 years, she was sent out to call an ambulance during De Brown's birth in Los Angeles. The immigration judge assumed her to be solely Spanish speaking based on the fact that her affidavit was in Spanish, and reasoned that she would not be sent to call an ambulance in a predominantly English speaking area. De Brown is correct in pointing out that the immigration judge's reasoning assumes some facts not in the record: that the affiant was solely Spanish speaking and that the area of Los Angeles where the birth occurred was predominantly English speaking. However, the immigration judge relied on other factors as well. The decision to discount the affidavit was also "due to the years which have elapsed from the time of the event to the present time," and because the affiant was not subject to cross-examination. In adopting the immigration judge's reasoning, the Board stressed the lack of cross-examination, and added its own observation which further supports the decision to discount the affidavit—there was no showing of unavailability for cross-examination. These are specific cogent reasons for discounting the affidavit's credibility, and the Board's decision to discount the credibility of the affidavit is supported by substantial evidence.

De Brown also argues that the immigration judge had insufficient reason to reject her mother's testimony explaining why De Brown's birth was registered in Mexico. The immigration judge said that he found the explanation "plausible, but not commendable." However, we review the decision of the Board, *id.*, which as to this point did not adopt the reasoning of the immigration judge. De Brown's argument cannot apply to the decision of the Board because it clearly and reasonably rejected the credibility of the mother's explanation.

AFFIRMED.