52 F.3d 332
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Cruz Catalino DIAZ-TILLERO, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 93-70931.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 5, 1995.*
Decided April 11, 1995.
 
 1
 Before: NOONAN, O'SCANNLAIN, and LEAVY, Circuit Judges
 
 
 2
 MEMORANDUM**
 
 
 3
 Cruz Catalino Diaz-Tillero (Diaz-Tillero) petitions this court to review the order of the Board of Immigration Appeal (Board) denying asylum and withholding of deportation. We deny the petition.
 
 PROCEEDINGS
 
 4
 On May 29, 1992, the INS served Diaz-Tillero with an order to show cause why he should not be deported for failing to comply with the conditions of his non-immigrant F1 student status. On July 30, 1992, Diaz-Tillero, appearing pro se, challenged deportation and applied for asylum. On February 26, 1993, after conducting an evidentiary hearing, Immigration Judge William Martin found Diaz-Tillero deportable. Judge Martin denied Diaz-Tillero's request for asylum and withholding of deportation, but granted voluntary departure. On October 26, 1993, the Board affirmed. Diaz-Tillero filed a timely petition for review to this court.
 
 FACTS
 
 5
 On May 27, 1990, Diaz-Tillero, a Venezuelan national and citizen, entered the United States as a non-immigrant F1 student authorized to attend the Montclair Prep School in Van Nuys, California. Diaz-Tillero never enrolled at the school. On May 29, 1992, the INS served Diaz-Tillero with an order to show cause why he should not be deported.
 
 
 6
 On July 30, 1992, Diaz-Tillero appeared before Immigration Judge William Martin. Although Diaz-Tillero admitted that he had not enrolled at the school, he nonetheless challenged deportation. Additionally, Diaz-Tillero sought asylum on the grounds that he feared persecution from the ORA political party in Venezuela due to his own participation in his brother's Senate campaign in Venezuela in 1988-89. According to Diaz-Tillero, the ORA selected his brother Angel as the ORA's Senate candidate in the summer of 1988. In 1989, one day before the election, the ORA removed Angel's name from the slate of candidates. Angel and Diaz-Tillero protested the action at several polling places. The ORA party, through the newspapers, accused Angel of sabotaging the election. The ORA party won the municipal election in 1990, and since then has grown in power. The Democratic Action Party holds power at the national level.
 
 
 7
 On appeal, Diaz-Tillero states that "the ORA leaders took reprisals against [Diaz-Tillero's] brother through their connections with the police and military." However, it appears from the transcript that the persecution consisted only of the published accusations of sabotage. A.R. at 51-2. Diaz-Tillero testified that he feared persecution from the police and the military as the ORA party had significant contacts within police and military organizations. Diaz-Tillero testified that he had not been detained by the police. He had been detained by the military. However, he had been detained only because he had been drafted and failed to report to duty in October 1989. Diaz-Tillero testified that he had not been persecuted in any way while detained, and that he had been released and allowed to leave the country with a Venezuelan passport. He also testified that he believed that he had not been persecuted at that time because the military had not yet received the information regarding his involvement in election protests.
 
 ANALYSIS
 
 8
 In order to be found eligible for asylum, an alien must demonstrate either past persecution or a well-founded fear of persecution. DeValle v. INS, 901 F.2d 787, 790 (9th Cir.1990). A well-founded fear must be both subjectively and objectively reasonable. "The subjective component requires a showing that the alien's fear is genuine. The objective component requires a showing, by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution." Id. The existence of a well-founded fear must be supported by substantial evidence.
 
 
 9
 In order to qualify for mandatory withholding of deportation, the alien must demonstrate a clear probability of persecution. Id. "[I]f the petitioner fails to demonstrate that he has a well-founded fear of persecution required for asylum under section 1158(a), we will need to proceed no further because a fortiori, the petitioner would fail to meet the more stringent standard of clear probability of persecution. Id. at 790 (citations omitted). In the case at bar, the Board concluded that the evidence provided by Diaz-Tillero would not support a reasonable fear of persecution, and thus that the evidence would not meet the more stringent clear probability standard. A review of the record supports the Board's conclusion.
 
 
 10
 Diaz-Tillero presented no evidence indicating that the Venezuelan government or the ORA party either persecuted him or attempted to persecute him in the past. Diaz-Tillero's one encounter with the military arose only because he failed to report for duty. However, this court has held that a government's conscription efforts generally do not constitute persecution. Alonzo v. INS, 915 F.2d 546, 548 (9th Cir.1990). Diaz-Tillero remained in Venezuela for at least six months after his political protest, and had no difficulty in obtaining a passport and leaving the country. See Rodriguez-Rivera v. INS, 848 F.2d 998, 1006 (9th Cir.1988) (claim of well-founded fear undermined by fact that petitioner lived undisturbed in El Salvador for two months following threat of persecution); Espinoza-Martinez v. INS, 754 F.2d 1536, 1540 (9th Cir.1985) (claim of well-founded fear undermined by fact that authorities allowed petitioner to obtain passport to leave the country).
 
 
 11
 Diaz-Tillero bases his fear of persecution on the persecution allegedly suffered by his brother. While it is true that a well-founded fear of persecution may be based on acts of political persecution endured by family members, the evidence in the case at bar shows that Diaz-Tillero's brother was not persecuted. As the government noted in its brief, "[a]side from some denunciations in the press, which cannot constitute persecution as petitioner implies, petitioner testified that his brother encountered no difficulties in Venezuela as a result of his protest." Given the evidence presented, it cannot be said that the Board erred in finding a lack of both well-founded fear of persecution and a clear probability of persecution. Accordingly, the Board did not err in denying asylum and withholding of deportation.
 
 
 12
 Diaz-Tillero also argues that the "BIA acted inappropriately by failing to consider the record as a whole when it issued its decision and failed [sic] to issue a reasoned opinion when it purportedly did consider the entire record." In support of his argument, Diaz-Tillero cites to the case of Mattis v. INS, 774 F.2d 965 (9th Cir.1985). In Mattis, this court wrote the following:
 
 
 13
 In reviewing a BIA decision for abuse of discretion, we require that its stated reasons evidence its consideration of all relevant factors. Cursory summary or conclusory statements are inadequate. Moreover, the BIA's denial of relief can be affirmed only on the basis articulated in the decision, and we cannot assume that the BIA considered factors that it failed to mention in its decision. Id. at 967 (citations omitted).
 
 
 14
 The Board's decision indicates that it did review the record, and that it relied on relevant factors in reaching its decision.
 
 
 15
 Accordingly, we DENY the petition.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3