67 F.3d 306
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Fawzi Arwad GHEITH, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70162.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 13, 1995.*
Decided Sept. 18, 1995.
 
 Before: HALL, KOZINSKI, and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Fawzi Arwad Gheith, a Palestinian native of the Israeli-occupied West Bank, requests review of a decision of the Board of Immigration Appeals ("BIA"). The BIA denied Petitioner's motion to reopen and reconsider its reversal of the Immigration Judge's ("IJ") order granting him asylum.[1] We conclude that the BIA did not abuse its discretion in denying Petitioner's motion, and we therefore deny the petition for review.
 
 
 3
 A motion to reopen and a motion to reconsider are "distinct motions with different requirements." Chung v. INS, 720 F.2d 1471, 1474 n. 2 (9th Cir.1983), cert. denied, 467 U.S. 1216 (1984). A motion to reopen must be based on material evidence that "was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. Sec. 3.2 (1995). A motion to reconsider need only "state the reasons upon which the motion is based" and "be supported by such precedent decisions as are pertinent." 8 C.F.R. Sec. 3.8 (1995).
 
 I. Motion to Reopen
 
 4
 The BIA may deny a petitioner's motion to reopen on any of three independent grounds: " failure to establish a prima facie case for the relief sought, failure to introduce previously unavailable, material evidence, and a determination that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief which he sought." INS v. Doherty, 502 U.S. 314, 323 (1992) (enumeration added). The BIA has "broad discretion" to grant or deny motions to reopen, id. (quoting INS v. Rios-Pineda, 471 U.S. 444, 449 (1985)), which "are disfavored for the same reasons as are petitions for rehearing and motions for a new trial on the basis of newly discovered evidence." INS v. Doherty, 502 U.S. at 323.
 
 
 5
 In the instant case, Petitioner submitted three items of new evidence in support of his motion to reopen: (1) a March 2, 1994 article from the San Francisco Chronicle detailing the release of Mohammed Khaled Ghaith, a former prisoner of the Israelis who was freed along with 596 other Palestinian prisoners as a gesture of good will; (2) Petitioner's declaration stating that his family members are known to the Israelis as being Palestinian nationalists and that if he were returned to Israel he would also be perceived as holding anti-Israeli sentiments; and (3) a 1993 Amnesty International Report on Israel and the Occupied Territories detailing the worsening relations between Palestinians and the Israeli military. The BIA denied petitioner's motion to reopen because (1) he failed to make out a prima facie case for asylum and (2) he failed to demonstrate why some of the evidence submitted in support of his motion could not have been presented earlier. We conclude that Petitioner's motion to reopen was properly denied.
 
 
 6
 The BIA correctly noted that information about Mohammed Ghaith's imprisonment was not " 'material and ... not [previously] available" evidence.' " 8 C.F.R. Sec. 3.2. Petitioner alleged that this Ghaith is his cousin, yet failed to show why, if Ghaith's eight-year term of imprisonment was relevant to his claim of persecution, Petitioner could not have presented evidence about it earlier. Moreover, the information about Ghaith is not material to Petitioner's claim of a well-founded fear of persecution. There is no evidence that Petitioner has had any personal relationship with Ghaith, that he had any involvement in Ghaith's political activities, or that the Israelis might somehow be led to believe that he held the same political beliefs as Ghaith. Additionally, Petitioner failed to show how Ghaith's early release from prison provides any support for a well-founded fear of persecution.
 
 
 7
 We also agree with the BIA that neither Petitioner's declaration nor the 1993 Amnesty International Report support a prima facie case for asylum. Petitioner's declaration states that he will be persecuted if returned to Israel because his "cousin [Mohammed Ghaith] and other members of my family are already known to the Israeli defense forces in the West Bank as being Palestinian nationalists with 'anti-Israeli' opinions." Other than Mohammed Ghaith, Petitioner does not specify which members of his family are known to hold anti-Israeli views. As analyzed above, Ghaith's imprisonment does not support Petitioner's claim of a well-founded fear of persecution. Moreover, Petitioner's testimony before the IJ that his father was able to use his influence as a judge to save two Palestinian boys running from Israeli soldiers undercuts his claim that he has a well-founded fear of persecution.[2]
 
 
 8
 Finally, the 1993 Amnesty International Report (the "1993 Report"), which details the worsening conditions in the West Bank, does not support Petitioner's prima facie case for asylum. The Report states that Palestinian detainees continue to be systematically tortured or ill-treated during interrogations, and that at least 120 Palestinians have been killed by Israeli forces either in armed clashes or under circumstances suggesting unjustifiable killings. The State Department's 1988 Country Report, relied upon by the BIA in connection with its December 31, 1992 order reversing the IJ's grant of asylum, is not significantly different. That report details a substantial increase in human rights abuses and the killing of 366 Palestinians by the Israeli military and Jewish settlers. Thus, the BIA correctly noted that the 1993 Report does not establish that the situation in the West Bank "has changed to such a degree that the analysis thereof in [the BIA's] December 31, 1992 decision is no longer valid." However tragic the conditions in the West Bank may be, we conclude that the 1993 Report does not serve as a basis to reopen the proceedings. By introducing the report, Petitioner has succeeded only in demonstrating general "conditions of discrimination in the country of origin" rather than the necessary well-founded fear of "particularized individual persecution." Prasad v. INS, 47 F.3d 336, 340 (9th Cir.1995).
 
 II. Motion to reconsider
 
 9
 A motion to reconsider must "state the reasons upon which the motion is based" and "be supported by such precedent decisions as are pertinent." 8 C.F.R. Sec. 3.8. Petitioner argues that he established a well-founded fear of persecution before the IJ based on his membership in a particular social group (i.e., "young Palestinian males residing in the Occupied West Bank") and his imputed anti-Israeli political opinion.
 
 A. Particular Social Group
 
 10
 The IJ concluded that Petitioner has an objectively reasonable fear of persecution based on his membership in the "Muslim/Palestinian social group." The BIA reversed this finding, reasoning (1) that the record contained no evidence that Petitioner was Muslim and (2) that Petitioner failed to show that "Arab Palestinian youth" constitute a class of people cognizable as a "particular social group" within the meaning of the Immigration and Naturalization Act, 8 U.S.C. Sec. 1101(a)(42)(A). Petitioner now redefines the "particular social group" to which he belongs as that of "young Palestinian males residing in the Occupied West Bank."
 
 
 11
 According to the United Nations High Commissioner for Refugees, Handbook on Procedures and Criteria for Determining Refugee Status, subparagraph 77 (Geneva 1979), "[a] particular social group' 'normally comprises persons of similar background, habits or social status." However, the term "particular social group" "does not encompass every broadly defined segment of a population, even if a certain demographic division does have some statistical relevance." Sanchez-Trujillo v. INS, 801 F.2d 1571, 1576 (9th Cir.1986). Rather, the phrase "implies a collection of people closely affiliated with each other, who are actuated by some common impulse or interest. Of central concern is the existence of a voluntary associational relationship among the purported members, which imparts some common characteristic that is fundamental to their identity as a member of that discrete social group." Id. In Sanchez-Trujillo, we held that the class of "young, working class, urban males of military age," did not constitute a "particular social group." Similarly, the class of "young Palestinian male residents of the West Bank" is not such a "social group" because it is not sufficiently "cohesive [and] homogenous." Id. at 1577. Indeed, this ill-defined class "may be so broad and encompass so many variables that to recognize any person who might conceivably establish that he was a member of this class is entitled to asylum or withholding of deportation would render the definition of 'refugee' meaningless." Id. (internal quotations omitted).
 
 B. Imputed Political Opinion
 
 12
 Petitioner next contends that he has a well-founded fear of persecution because an anti-Israeli political opinion will be imputed to him based on the fact that he is a young Palestinian male living in the West Bank. As analyzed above, Petitioner has not established his membership in a "particular social group." He has thus necessarily failed to demonstrate that an anti-Israeli political opinion will be imputed to him on the basis of his identification with that group.
 
 
 13
 This court distinguishes between legitimate criminal prosecution and "governmental persecution based on [petitioner's] perceived political beliefs." Blanco-Lopez v. INS, 858 F.2d 531, 534 (9th Cir.1988) (emphasis omitted). Petitioner testified about three separate incidents in which he claimed to have been beaten and incarcerated in 1983.[3] The BIA concluded that none of the incidents suggested governmental persecution. We agree. The record shows that Petitioner was detained on two occasions for questioning in connection with rock-throwing incidents. The third incident to which Petitioner testified involved the shooting of his best friend by Israeli soldiers after he stabbed one of them. Petitioner has failed to establish that the Israeli government's actions were politically motivated. Cf. Id. ("We find no evidence in the record ... that an actual, legitimate, criminal prosecution was initiated against [the appellant.]"; Hernandez-Ortiz v. INS, 777 F.2d 509, 516 (9th Cir.1985) (emphasis added) ("When a government exerts its military strength against an individual or a group within its population and there is no reason to believe that the individual or group has engaged in any criminal activity or other conduct that would provide a legitimate basis for governmental action, the most reasonable presumption is that the government's actions are politically motivated.") (emphasis added).
 
 C. BIA's Credibility Determination
 
 14
 Petitioner next attacks the BIA's failure to reconsider its independent finding that Petitioner lacked credibility. He argues that because the IJ found him credible based on his tone and demeanor, the BIA abused its discretion in making a contrary finding. Although the IJ's credibility determinations are accorded substantial deference, De Valle v. INS, 901 F.2d 787, 792 (9th Cir.1990), the BIA may reject the IJ's credibility findings in appropriate circumstances based on a de novo review. Castillo v. INS, 951 F.2d 1117, 1120 n. 1 (9th Cir.1991) (citing McMullen v. INS, 658 F.2d 1312, 1318 (9th Cir.1981)). The BIA correctly found that Petitioner's asylum application and testimony contained inconsistencies going to the heart of his claim of persecution.[4] See Ceballos-Castillo v. INS, 904 F.2d 519, 520 (9th Cir.1990) ("refugee" status appropriately denied where asylum application was inconsistent with sworn testimony on points ranging from the general claim of persecution to the details of that claim). We therefore conclude that the BIA's adverse credibility determination was supported by substantial evidence and that the BIA stated specific and cogent reasons for rejecting the IJ's credibility finding. See De Brown v. Department of Justice, 18 F.3d 774, 778 (9th Cir.1994) (citing DeValle v. INS, 901 F.2d 787, 792 (9th Cir.1990)).[5]
 
 
 15
 Finally, Petitioner contends that the BIA's adverse credibility finding was based on evidence improperly introduced by the government. This evidence called into question the validity of his second marriage and his paternity of a child born in the United States. Even assuming that Petitioner is correct that the evidence should not have been admitted under 8 C.F.R. Sec. 3.2, we conclude that it had no effect on the BIA's credibility determination. Although the BIA did note that the evidence was relevant to Petitioner's credibility, the BIA did not once mention it in its discussion of Petitioner's credibility.
 
 III. Withholding of Deportation Claim
 
 16
 Petitioner next contends that the BIA abused its discretion by failing to consider his claim to withholding of deportation. This argument is meritless. An applicant only qualifies for withholding of deportation if he shows a "clear probability of persecution" upon return to his country of origin. This standard is more stringent than the "well-founded fear" standard applicable to asylum claims. Because Petitioner did not meet the lower standard for asylum, he necessarily failed to show a "clear probability" of persecution. See Kazlauskas v. INS, 46 F.3d 902, 907 (9th Cir.1995) ("Because [petitioner] cannot meet the lower standard of section 208 [asylum], he necessarily fails to show a 'clear probability' of persecution under section 243(h) [withholding of deportation].")
 
 
 17
 For the foregoing reasons, we deny the petition for review.
 
 
 18
 PETITION DENIED.
 
 
 
 *
 This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The BIA's order reversing the IJ's grant of asylum was issued on December 31, 1992. Because Gheith's petition for review of that decision was untimely, this court dismissed it for lack of jurisdiction on April 25, 1994
 
 
 [2]
 According to Petitioner, "my dad, he told [the soldiers], I am a Judge and you [will] not be able ... you are not going to get these guys except if you kill me and the time, they hear he's a Judge, you know, they back up a little bit but if he's regular guy, they will shoot him right away." "[T]hey know my dad is a Judge, you know, they just took the names of the kids and that's it."
 
 
 [3]
 Significantly, Petitioner also testified that he experienced no further trouble with Israeli soldiers after the three incidents in 1983. Thereafter, he remained in Israel operating his own business and conducting his daily affairs without interference from the Israeli military until his arrival in the United States in 1985
 
 
 [4]
 For instance, Petitioner's asylum application indicated that his brother-in-law had been a member of the PLO, but he denied this at the hearing before the IJ
 
 
 [5]
 Even assuming Petitioner's credibility, however, we agree with the BIA that there is nothing special about Petitioner's encounters with the Israeli military that sets him off from other persons in the Occupied Territories