Audelio
**ARRIAGA–BARRIENTOS, Petitioner,**

v.

**U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 89–70310.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 4, 1990.

Decided Feb. 13, 1991.

As Amended on Denial of
Rehearing July 1, 1991.

Tom Stanley, Los Angeles, Cal., for petitioner.

Michael Johnson, Asst. U.S. Atty., Los Angeles, Cal., for respondent.

Before WALLACE, Chief Judge, and ALARCON and POOLE, Circuit Judges.

WALLACE, Chief Judge:

Arriaga–Barrientos petitions for review of the decision of the Board of Immigration Appeals (Board) denying his request for asylum and withholding of deportation. The Board had jurisdiction pursuant to 8 C.F.R. §§ 3.1(b)(2), 242.21 (1990). We have jurisdiction over this timely-filed petition pursuant to 8 U.S.C. § 1105a. We deny the petition.

## I

Arriaga–Barrientos is a native and citizen of Guatemala. He entered the United States without inspection near San Ysidro, California, on or about October 13, 1985. Once apprehended, he conceded deportability and applied for asylum or withholding of deportation. The immigration judge denied his application and ordered deportation. Arriaga–Barrientos timely appealed to the Board, which dismissed the appeal.

Arriaga–Barrientos served in the Guatemalan military from July 1973 until January 1985, when he was discharged. He testified before the immigration judge that he feared both the Guatemalan military and its armed opposition. He said his release from the military might be construed as an act sympathetic to the opposition. He admitted, however, that his discharge was in the normal course of service. He has not been threatened or even approached by the military. Indeed, in October 1985, the government issued him a passport and visa.

On the other hand, he testified that his long-standing military service might be construed as an expression of political support for the government. He suggested that other persons have been killed by the opposition upon the completion of their military service, but he could not recall specific instances of such persecution. He has not been threatened or approached by the opposition.

Finally, Arriaga–Barrientos discussed the disappearance of two of his brothers. He testified that they were abducted by unknown gunmen for unknown reasons, and suggested that the gunmen might be loyal to either the government or its armed opposition. Both brothers lived some eight hundred kilometers from the region in which Arriaga–Barrientos lived.

## II

Section 243(h) of the Immigration and Nationality Act (Act), 8 U.S.C.

§ 1253(h), requires the Attorney General to withhold deportation "if the Attorney General determines that such alien's life or freedom would be threatened ... on account of race, religion, nationality, membership in a particular social group, or political opinion." Section 243(h) is a mandatory provision which entitles the alien to a withholding of deportation upon proof of a clear probability of persecution. *Diaz–Escobar v. INS*, 782 F.2d 1488, 1491 (9th Cir.1986) (*Diaz–Escobar*).

■ Section 208(a) of the Act, 8 U.S.C. § 1158(a), gives the Attorney General discretion to allow political asylum if the Attorney General determines the alien to be a refugee within the meaning of section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A). Like section 243(h), section 101(a)(42)(A) requires proof of persecution on account of "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). To establish asylum eligibility, however, the alien need not meet the clear probability test. *Diaz–Escobar*, 782 F.2d at 1491. Rather, the alien need only prove a well-founded fear of persecution. *De Valle v. INS*, 901 F.2d 787, 790 (9th Cir.1990). A well-founded fear must be both subjectively and objectively reasonable. *See id.* The subjective component requires a showing that the alien's fear is genuine. *Id.* The objective component requires a showing, by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution. *Id.*

■ We review the Board's denial of asylum and withholding of deportation for substantial evidence. *Diaz–Escobar*, 782 F.2d at 1491–92. This standard is only slightly stricter than the clear error standard. *Rodriguez–Rivera v. INS*, 848 F.2d 998, 1001 (9th Cir.1988). Under this deferential standard, we may not reverse the Board simply because we disagree with its evaluation of the facts, but only if we conclude that the Board's evaluation is not supported by substantial evidence. *Id.* This standard requires only that the

Board's conclusion, based on the evidence presented, is substantially reasonable. *Id.*

The Board found that Arriaga–Barrientos failed to meet his burden of proof under either the clear probability or well-founded fear standard. We will first review this finding under the more generous well-founded fear standard. If we conclude that substantial evidence supports the Board's finding as it relates to well-founded fear, we will not need to review separately in light of the more stringent clear probability standard; Arriaga–Barrientos's failure as to the former necessarily demonstrates his failure as to the latter. *Diaz–Escobar*, 782 F.2d at 1492.

Assuming his fear is subjectively genuine, we analyze it for objective reasonableness. Arriaga–Barrientos is neither politically active nor even publicly declared as politically neutral, yet he points to the chance that a political opinion will be erroneously attributed to him. He has not been persecuted or threatened, but he contends that the abduction of geographically distant relatives establishes a requisite well-founded fear to him. He asks for status-based asylum on the basis of his former service in the Guatemalan military. Thus, Arriaga–Barrientos's claim appears beyond the scope of the Act, which requires a well-founded fear of persecution on account of a political opinion, membership in a social group, or another specifically enumerated basis. *See* 8 U.S.C. §§ 1101(a)(42)(A), 1158(a). Nonetheless, our cases require a more extensive discussion of the issue.

A.

■ We have held that political neutrality is a political opinion, or in other words, that the absence of a political opinion is a political opinion. *See, e.g., Arteaga v. INS*, 836 F.2d 1227, 1231–32 (9th Cir.1988); *Bolanos–Hernandez v. INS*, 767 F.2d 1277, 1286–87 (9th Cir.1984) (*Bolanos–Hernandez*) (alien who severed all ties with political organizations, and refused to join the guerrillas despite threats to his life, qualified for political asylum). Other circuits have declined to follow. *See, e.g., Alvarez–*

*Flores v. INS*, 909 F.2d 1, 6 n. 4 (1st Cir.1990) ("Only the Ninth Circuit clearly has held that neutrality is a political opinion within the meaning of the Act."); *Perlera–Escobar v. Executive Office for Immigration*, 894 F.2d 1292, 1297–98 (11th Cir. 1990) (pointing out that acceptance of neutrality as a political opinion "would create a sinkhole that would swallow the rule"); *Cruz–Lopez v. INS*, 802 F.2d 1518, 1520 n. 3 (4th Cir.1986) (declining to follow the Ninth Circuit rule). Although we have recently considered the limits appropriate to this potentially expansive theory, *see Estrada–Posadas v. INS*, 924 F.2d 916, 919–20 (9th Cir.1991); *Alonzo v. INS*, 915 F.2d 546, 548–49 (9th Cir.1990) (*Alonzo* ); *Canas Cuadras v. INS*, 910 F.2d 567, 571 (9th Cir.1990) (*Canas Cuadras* ), our precedent allows Arriaga–Barrientos to argue that his complete lack of an articulated political opinion threatens him with political persecution.

He fails to make the preliminary showing, however, that a political opinion (either as ordinarily understood or open political neutrality) might be erroneously imputed to him. He does not have relatives whose political opinions might be attributable to him. *Cf. Ramirez Rivas v. INS*, 899 F.2d 864, 865–67 (9th Cir.1990) (*Ramirez Rivas* ) (sizeable family whose extraordinary level of political activity subjected politically inactive kindred to a likelihood of persecution). He has not publicly articulated his political neutrality. *Cf. Bolanos–Hernandez*, 767 F.2d at 1286–87 (open refusal to join either side). He has not even engaged in activities whose content is arguably political; in a country with mandatory conscription, of course his mere accedence to military service is not a political statement. *See Alonzo*, 915 F.2d at 548, *citing Canas–Segovia v. INS*, 902 F.2d 717, 728 (9th Cir.1990) (government's conscription efforts generally do not constitute persecution). Because he has not shown the existence of a political opinion, we need not consider whether he has demonstrated a reasonable fear of persecution because of his opinion. *See Canas Cuadras*, 910 F.2d at 571 (alien must prove that harassment was based on his political views).

We refuse to expand our interpretation of the Act to cover Arriaga–Barrientos. We hold that Arriaga–Barrientos has not shown an actual or imputed political opinion for the purposes of asylum eligibility.

### B.

■ We have held that acts of violence against a petitioner's friends or family members may establish a well-founded fear, notwithstanding an utter lack of persecution against the petitioner herself. *See Ramirez Rivas*, 899 F.2d at 867. We have required, however, that this violence create a pattern of persecution closely tied to the petitioner. *See id.* Allegations of isolated violence are not enough. *See Echeverria–Hernandez v. INS*, 923 F.2d 688, 691–92 (9th Cir.1991). The abduction of two geographically distant brothers by unknown gunmen for unknown reasons does not establish a well-founded fear. Thus, Arriaga–Barrientos fails on this ground, as well.

### C.

■ Finally, we consider Arriaga–Barrientos's claim that, as a former serviceman in the Guatemalan military, he is within a social group singled out for persecution. This is surely not something contemplated by the Act. Guatemala is a violent place, and these may be especially violent times. But governmental efforts to quell this violence through the use of force do not subject the entire military establishment to status-based persecution. Military enlistment in Central America does not create automatic asylum eligibility within the United States. We hold that the military is not a social group qualifying its servicemen or former servicemen for asylum eligibility. *See Montecino v. INS*, 915 F.2d 518, 520 (9th Cir.1990).

### III

We are sympathetic to the plight of Arriaga–Barrientos and persons like him. The reasons to enter the United States illegally are numerous and not insubstantial. Civil strife, random violence, the lack of governmental control, and economic opportunity here may make Guatemala an unpleasant place to live or return. Some day, perhaps motivated by these concerns, Congress

may open our borders to all persons seeking the opportunity to live in a place ruled by law and providing economic betterment. But Congress has not done so, and as judges constrained by the separation of powers, we lack the legitimate authority to undermine congressional will.

The Board found that Arriaga–Barrientos failed to prove a well-founded fear of persecution. This finding is supported by substantial evidence, and therefore, must be affirmed. We need not separately consider whether Arriaga–Barrientos has proved a clear probability of persecution; his failure as to the well-founded fear standard necessarily demonstrates his failure as to the clear probability standard. We affirm the Board's denial of political asylum and withholding of deportation.

PETITION DENIED.