15 F.3d 1083
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Sileshi Gizachew BELAY, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 93-70279.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 3, 1993.
Decided Jan. 31, 1994.
 
 Before: REINHARDT, BRUNETTI and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 An Ethiopian alien seeks review of a decision of the Board of Immigration Appeals affirming the immigration judge's denial of his application for asylum, 8 U.S.C. Sec. 1158(a), and withholding of deportation, 8 U.S.C. Sec. 1253(h). We have jurisdiction to review the deportation order pursuant to section 106 of the Immigration and Nationality Act, 8 U.S.C. Sec. 1105(a). We deny the petition.
 
 BACKGROUND
 
 3
 Petitioner Sileshi Belay is a twenty-three year old native and citizen of Ethiopia who entered the United States in August 1986 as a non-immigrant visitor. On December 10, 1986, he filed an application for political asylum with the INS, but withdrew it on January 5, 1987. He filed a second application for political asylum in 1987, which was denied. He was subsequently placed in extended voluntary departure status for two years because the U.S. government was not returning people to Ethiopia.
 
 
 4
 At his immigration hearing, Belay was found deportable for overstaying his visa, but he claimed eligibility for asylum and withholding of deportation. Belay testified that he was arrested and detained by the government six times between 1984 and 1986. Belay said that the first time he was arrested, he was kept in the dark for three days, and that the fourth time that he was arrested he was tortured. He also testified that he belonged to the Ethiopian Democratic Union, an anti-government organization, but that the government did not know of his membership in this group.
 
 
 5
 Belay believes that he is on a government blacklist due to his anti-government activities. He submitted a photocopy of a document, purportedly issued by the Ministry of National Security, that his father sent him from Ethiopia at the time of his second asylum application. The paper, dated December 28, 1986, states that Belay was "believed to have participated in anti-revolutionary activities." The INS conducted an evaluation of the paper by its Forensic Document Laboratory. The laboratory determined that the photocopy was produced by an American copy machine, and that the original was made from lined pad paper rather than bond paper, inconsistent with the production of an official document.
 
 
 6
 In 1986, Belay applied for and received an Ethiopian passport. When questioned as to why the passport was granted him, given his purported anti-government activities, he said that his mother was sick and was thus planning to go to the U.S. for medical treatment and he was going to be allowed to accompany her, and that his father bribed an immigration official. However, his exit visa was issued after his mother's death.
 
 DISCUSSION
 
 7
 I. Denial of Asylum and Withholding of Deportation.
 
 
 8
 A. Standard of Review.
 
 
 9
 Granting relief pursuant to Section 1158(a) is within the discretion of the Attorney General. INS v. Cardoza-Fonseca, 480 U.S. 421, 428 n. 5 (1987). Accordingly, we review the BIA's denial of asylum for an abuse of discretion. Acewicz v. INS, 984 F.2d 1056, 1061 (9th Cir.1993).
 
 
 10
 The factual findings supporting the Board's asylum determination, including whether the alien has demonstrated a well-founded fear of persecution, are reviewed under the "substantial evidence" standard. Abedini v. INS, 971 F.2d 188, 191 (9th Cir.1992). An alien who seeks reversal of the BIA's determination "must show that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." INS v. Elias-Zacarias, 112 S.Ct. 812, 817 (1992).
 
 
 11
 Relief pursuant to 8 U.S.C. Sec. 1253(h) lacks the discretionary element of the asylum determination: if the alien proves his statutory eligibility then the INS is barred from deporting him. Turcios v. INS, 821 F.2d 1396, 1398 (9th Cir.1987); INS v. Stevic, 467 U.S. 407, 421 n. 15 (1984).
 
 
 12
 B. Well-Founded Fear of Persecution.
 
 
 13
 Section 208(a) of the Immigration and Nationality Act, 8 U.S.C. Sec. 1158(a), provides that any alien is eligible for asylum who is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. Sec. 1101(a)(42)(A). The "well-founded fear" standard has both a subjective and objective component. Cardoza-Fonseca, 480 U.S. at 430-31. The subjective component requires only that the alien's fear be genuine. Desir v. Ilchert, 840 F.2d 723, 726 (9th Cir.1988). The objective component requires "credible, direct, and specific evidence in the record of facts that would support a reasonable fear" of persecution. Rodriguez-Rivera v. INS, 848 F.2d 998, 1002 (9th Cir.1988) (per curiam) (emphasis in original).
 
 
 14
 The BIA rejected Belay's claim because his credibility was doubtful, and he presented no "detailed or persuasive evidence to substantiate [his] claim." The BIA's conclusion appears "substantially reasonable." See Arriaga-Barrientos v. INS, 925 F.2d 1177, 1179 (9th Cir.1991).
 
 
 15
 In the immigration context, credibility findings are due "substantial deference." Turcios v. INS, 821 F.2d 1396, 1399 (9th Cir.1987). The factfinder must, however, support an adverse credibility determination with "a specific, cogent reason for [his] disbelief." Id. (quoting Damaize-Job v. INS, 787 F.2d 1332, 1338 (9th Cir.1986)). In this case, the BIA listed several sound reasons for doubting Belay's credibility.
 
 
 16
 The BIA points to the significant discrepancies between Belay's present claims and those described in his original asylum application. Belay's first application indicated that he feared that he would be forced into compulsory military service on return to Ethiopia. It was only in his later applications that he described his alleged political activities and those of his brother. Belay's explanation that his English was poor, so that he did not understand the questions well on the first application, is undermined by the fact that he obviously understood the questions sufficiently well to describe his fear of military service.
 
 
 17
 The record also shows that Belay lived at home with his father, a manager in the Ministry of Industry, and that his father was aware of his anti-government activities. But if anti-government leaflets were found in this house, as Belay claims, it would seem likely that Belay's father would be held responsible, risking the loss of his government job. The constant political activity and resulting government harassment that Belay describes regarding himself and his brother is somewhat inconsistent with the "nice home" and secure government job enjoyed by his father. Similarly, Belay's ability to follow an accelerated program in high school, which allowed him to graduate at age fifteen, does not indicate great difficulty in this period. Finally, it would be somewhat unusual for the government to provide Belay with an exit visa after arresting him several times, then arrest him once more, just before his departure, and then allow him to leave the country freely.
 
 
 18
 The absence of corroborating evidence, in addition, does not help Belay's claim. The BIA points to the doubtful authenticity of the purported Ethiopian government document, and the fact that it was sent by Belay's father to be used for Belay's asylum application. Otherwise, Belay provided no corroborating evidence, nothing even to confirm the existence of the Ethiopian Democratic Union, of which he claimed to be a member. Corroborating evidence is not necessary for an asylum application, as "an alien's unrefuted and credible testimony may be sufficient," Turcios, 821 F.2d at 1402, but it is helpful. In Turcios, the alien testified "in great detail about his arrest, torture, confinement, and release" in El Salvador. Here, Belay's credibility is suspect, his testimony was rather more general, and reliable corroborating evidence is lacking.
 
 
 19
 C. Withholding of Deportation.
 
 
 20
 To qualify for withholding of deportation under 8 U.S.C. Sec. 1253(h), the alien must demonstrate a "clear probability of persecution." Stevic, 467 U.S. at 413. As this is a more stringent standard than the well-founded fear standard for asylum, an alien who cannot establish a well-founded fear is necessarily ineligible for withholding of deportation. Berroteran-Melendez v. INS, 955 F.2d 1251, 1258 (9th Cir.1992). Accordingly, Belay's failure to meet the asylum standard means that he cannot claim relief under Sec. 1253(h).
 
 
 21
 The decision of the BIA is AFFIRMED and the petition for review is DENIED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3