67 F.3d 308
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Sandra Maria SALAZAR; Rene Javier Prado-Salazar, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70170.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 18, 1995.*
Decided Sept. 29, 1995.
 
 Before: BROWNING, GOODWIN, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Sandra Maria Salazar, a native and citizen of Nicaragua, petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming the order of an immigration judge ("IJ"), denying Salazar's application for asylum and withholding of deportation under sections 208(a) and 243(h) of the Immigration and Nationality Act ("INA"), 8 U.S.C. Secs. 1158(a) and 1253(h), and granting her voluntary departure.[1] We have jurisdiction pursuant to 8 U.S.C. Sec. 1105a(a), and we deny the petition.
 
 
 3
 * Background
 
 
 4
 On December 14, 1989, the Immigration and Naturalization Service ("INS") issued Salazar an order to show cause why she should not be deported as an alien who had entered the United States without inspection in violation of section 241(a)(2) of the INA, 8 U.S.C. Sec. 1251(a)(2). Salazar, represented by counsel, conceded deportability, but sought asylum and withholding of deportation for her and her minor son or in the alternative voluntary departure.
 
 
 5
 Salazar's testimony before the IJ and her statements in her application can be summarized as follows.
 
 
 6
 Salazar testified that she and her family were identified as Somoza supporters. Her uncle had been a member of Somoza's National Guard, known as "Commander Bravo." The uncle left Nicaragua after the Sandinistas came to power, but apparently was assassinated in Honduras by Sandinista agents.
 
 
 7
 At the time of the Sandinista revolution in 1979, Salazar was a secretary at the Ministry of Finance. After the Sandinistas came to power, Salazar continued to work at the ministry under the Sandinista government for approximately six years, until 1985. In 1985, she was granted two exit visas by the government. She left the country in 1985 using the second exit visa.
 
 
 8
 While in Nicaragua, Salazar was pressured to join various Sandinista organizations, including the Popular Militia. Salazar claimed that she was subject to various threats and harassment by her co-workers and Sandinista officials because of her refusal to join. Other co-workers also were pressured to join the militia, and several left the country. Salazar also submitted a document indicating that there was a file on her and that it alleged that she was involved in a counter-revolutionary conspiracy and was related to Commander Bravo. Salazar's testified, however, that she has various siblings who still live in Nicaragua, including a brother who uses the "Salazar" family name, and that none has been placed in danger by virtue of their relationship to Commander Bravo.
 
 
 9
 Salazar stated that she was aware of the change in government in Nicaragua and that military draft had been eliminated, but stated that she still feared returning to Nicaragua because the Sandinistas still controlled the military.
 
 
 10
 The IJ found that Salazar had failed to met her burden of establishing past persecution or a well-founded fear of future persecution on account of political opinion or any other enumerated ground. Consequently, the IJ denied Salazar's application for asylum and withholding of deportation, but granted her voluntary departure.
 
 
 11
 The BIA reviewed the entire record and adopted the IJ's decision. Salazar timely petitions for review.
 
 II
 Analysis
 A. Scope and Standard of Review
 
 12
 "The factual findings underlying the decision are reviewed for substantial evidence, and the [BIA's] determination should not be reversed absent compelling evidence of persecution." Kazlauskas v. INS, 46 F.3d 902, 905 (9th Cir.1995); INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992) (under substantial evidence standard, the BIA's determination will be upheld unless "the evidence that [the alien] presented was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution").
 
 B. Merits
 
 13
 To establish eligibility for asylum based on a well-founded fear of future persecution, asylum applicants must show both a genuine subjective fear of persecution and an objectively reasonable fear. Acewicz v. INS, 984 F.2d 1056, 1061 (9th Cir.1993). The burden is on the applicant to meet this standard. Id. "The objective component requires a showing by 'credible, direct, and specific evidence of facts showing a reasonable fear of persecution' " on account of one of the enumerated grounds. Id. (quoting Rodriguez-Rivera v. INS, 848 F.2d 998, 1002 (9th Cir.1988) (per curiam)). The mere apprehension of persecution, however, is insufficient to establish a well-founded fear of persecution. Blanco-Comarribas v. INS, 830 F.2d 1039, 1042 (9th Cir.1987).
 
 
 14
 Here, substantial evidence supports the BIA's determination that Salazar failed to meet her burden of proof. The evidence presented by Salazar does not support an objective well-founded fear of persecution. Salazar lived unharassed in Nicaragua for six years after the Sandinista revolution and maintained her job as a Sandinista government employee. While Salazar and others connected with the Somoza regime may have been harassed or discriminated against based on their perceived political opposition to the Sandinista regime, this does not by itself establish a well-founded fear of persecution.
 
 
 15
 A requirement of compulsory military service alone is not sufficient to establish persecution. See Rodriguez-Rivera v. INS, 848 F.2d 998, 1005 (9th Cir.1988); Abedini v. INS, 971 F.2d 188, 191 (9th Cir.1992). Thus, even if the Sandinistas had forced her to join the militia, which they did not, it would not be per se evidence of persecution. See Rodriguez-Rivera, 848 F.2d at 1005. Moreover, Salazar's application for asylum is further undermined by the changes in Nicaragua since 1990 when the Sandinista government was voted out of office and compulsory military service was ended. Finally, Salazar provides no evidence that the current Nicaraguan government is unable or unwilling to protect her from the Sandinistas in the military, nor does she provide objective evidence supporting her subjective fear of persecution. See Acewicz, 984 F.2d at 1061; Blanco-Comarribas, 830 F.2d at 1041-42 (9th Cir.1987). Given the evidence presented, we cannot say that "a reasonable factfinder would be compelled to conclude that [Salazar] was subject to persecution." See Prasad v. INS, 47 F.3d 336, 339 (9th Cir.1995).[2]
 
 
 16
 Because the standard for withholding of deportation is higher than the standard for a grant of asylum and because Salazar has failed to meet the lower standard for eligibility for asylum, we also affirm the BIA's denial of withholding of deportation. See Acewicz, 984 F.2d at 1062.
 
 
 17
 PETITION FOR REVIEW DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Salazar's asylum application also contained a derivative application for her minor son. See 8 C.F.R. Sec. 208.21. Because his claim stands or falls based on Salazar's claim, this disposition will address the challenges to the denial of her application
 
 
 [2]
 To the extent Salazar's claim is based on persecution suffered by family members, this claim fails too. While persecution or "acts of violence against an [alien's] friends or family may establish a well-founded fear" of persecution, see Arriaga-Barrientos v. INS 937 F.2d 411, 414 (9th Cir.1991), it "do[es] not necessarily establish a well-founded fear of persecution absent a pattern of persecution tied to the [alien]." Prasad, 47 F.3d at 340. Here, no such pattern or connection has been shown
 Likewise, to the extent Salazar contends that she is entitled to asylum based solely on past persecution, this claim fails too. While past persecution alone may be sufficient, it is limited to situations in which the applicant has suffered "under atrocious forms of persecution." Acewicz, 984 F.2d at 1062 (citing Matter of Chen, Int.Dec. 3104 at 4 (BIA 1989)); Desir v. Ilchert, 840 F.2d 723, 729 (9th Cir.1988). Here, no such showing was made.