83 F.3d 426
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Trinidad DELFIN, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70002.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 12, 1996.
Decided April 26, 1996.
 
 Before: THOMPSON, KLEINFELD, and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Trinidad Delfin ("Delfin") entered the United States lawfully in September 1984, but overstayed her nonimmigrant visa. Delfin worked as a domestic servant in the California home of Irene and Gregorio Araneta, the daughter and son-in-law of deposed Philippine President Ferdinand Marcos. Delfin came to the attention of immigration officials during an FBI-led search of the Araneta home. An immigration judge ("IJ") found Delfin deportable under 8 U.S.C. § 1251(a)(2) (1988). The IJ denied Delfin's suppression challenge to the documents admitted to prove her deportability. The IJ also denied Delfin's applications for political asylum and withholding of deportation under 8 U.S.C. §§ 1158(a) and 1253(h). Delfin appealed the IJ's decision to the Board of Immigration Appeals ("Board"). The Board dismissed Delfin's appeal. We have jurisdiction to review the Board's final order of deportation under 8 U.S.C. § 1105a(a). We deny review.
 
 1. Suppression Challenge
 
 3
 To prove Delfin's deportability, the Immigration and Naturalization Service ("INS") introduced into evidence a completed INS Form I-213, Record of Deportable Alien ("Form I-213"), and photocopies of Delfin's passport. Delfin contends that this evidence derives directly from a search that egregiously violated her Fourth Amendment rights,[1] and must be suppressed as "fruit of the poisonous tree." The Board determined, however, that the connection between this evidence and the search was sufficiently attenuated to purge the taint of any illegality.[2]
 
 
 4
 We review the Board's findings of fact under the substantial evidence rule. 8 U.S.C. § 1105a(a)(4). Factual findings underlying suppression issues may be reversed only if the evidence is such that no reasonable fact finder could agree with the Board. Gonzalez-Rivera v. INS, 22 F.3d 1441, 1444 (9th Cir.1994). Mixed questions of law and fact as to whether evidence derived from an illegal search is sufficiently tainted to require suppression are reviewed de novo. United States v. Johns, 891 F.2d 243, 244 (9th Cir.1989).
 
 
 5
 In Wong Sun v. United States, 371 U.S. 471 (1963), the Court stated:
 
 
 6
 We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of the illegality or instead by means sufficiently distinguishable to be purged of the primary taint."
 
 
 7
 Id. at 487-88 (citation omitted).
 
 
 8
 In order for the causal chain between a Fourth Amendment violation and a defendant's statement made subsequent thereto to be broken, the statement must " 'be sufficiently an act of free will to purge the primary taint.' " Brown v. Illinois, 422 U.S. 590, 602 (1975) (quoting Wong Sun, 371 U.S. at 476). In Brown, the Court rejected any "talismanic test" for determining whether a statement is sufficiently an act of free will, id. at 603, and instead discussed four factors for analysis.
 
 
 9
 The "threshold requirement" for purging the taint of Fourth Amendment illegality is a confession's voluntariness under the Fifth Amendment. Id. at 604.[3] In the criminal context of Brown, voluntariness depended on whether the accused received adequate Miranda warnings. In the civil immigration context, an alien's statements made at an INS office several days after an illegal search are not involuntary for Fifth Amendment purposes "where there is nothing in the record indicating that the alien's statement was induced by coercion, duress, or improper action" by the immigration officer. Cuevas-Ortega v. INS, 588 F.2d 1274, 1278 (9th Cir.1979).[4]
 
 
 10
 Brown also identified three further factors for analysis: (1) the temporal proximity of the illegality and the confession; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. 422 U.S. at 603-04. The government bears the burden of proving that the taint of illegality was purged. Id. at 604.
 
 
 11
 Delfin's illegal status in the United States first came to the INS's attention while she was being detained by the FBI during a search-and-seizure operation on October 6, 1988. Without a warrant or reasonable suspicion of illegal status authorizing them to do so, INS agents present during the search questioned Delfin about her immigration status. In response, Delfin made truthful statements establishing her deportability.
 
 
 12
 INS agents did not take Delfin into custody that evening after determining she was out-of-status, on account of her age, health, and the unlikelihood that she would abscond: Instead, INS Agent Witt told Delfin to appear the next day at the local INS office to initiate deportation proceedings.
 
 
 13
 The Board found that Delfin voluntarily appeared with her attorney and her passport at the INS office five days later, on October 11, 1988. She gave the same truthful information about herself that she had given the INS agent on the night of the search. However, a different INS agent, Agent Isenhart, who had not participated in the search, interviewed Delfin. Based directly upon her responses in person that day in the office and upon her surrendered passport, Isenhart completed a Form I-213. The Board also found:
 
 
 14
 There is no indication that [Delfin] was forced or coerced into providing the information necessary to complete the Form I-213 or into turning over her passport. There is no indication that counsel who accompanied her objected to the questions asked of the respondent, raised the "fruit of the poisonous tree" argument presented by her current attorney, or otherwise advised the respondent not to cooperate in answering the authorities' questions.
 
 
 15
 The Board concluded that the "connection between the [INS's] actions on October 6, 1988, and the evidence in the form of the respondent's passport and Form I-213 has become so attenuated as to dissipate any taint that may have occurred."
 
 
 16
 The Board's findings of fact are not clearly erroneous and its legal conclusions are sound under Brown. Delfin's statements at the INS office meet the threshold requirement of Fifth Amendment voluntariness. Moreover, the time that elapsed between the illegal search and her second "confession," the presence of counsel indicating Delfin was aware of her rights, and the intervening circumstance of release, all indicate her acts were sufficiently acts of "free will" to purge any taint of illegality. We are not persuaded that any official misconduct in this case was so purposeful and flagrant as to require a different result.
 
 
 17
 We therefore conclude that Delfin's statements and surrender of passport at the INS office were not "fruits of the poisonous tree" requiring suppression.
 
 2. Political Asylum
 
 18
 The Attorney General may, in her discretion, grant asylum to an alien who is a refugee. 8 U.S.C. § 1158(a). To qualify as a refugee, under 8 U.S.C. § 1101(a)(42)(A), an applicant must show either past persecution or a well-founded fear of future persecution. Singh v. Ilchert, 69 F.3d 375, 378 (9th Cir.1995) (hereinafter "Singh II "). Here, Delfin makes no claim of past persecution; thus, she must show a well-founded fear of future persecution. To establish future persecution, a petitioner must satisfy both a subjective and objective component. The subjective component may be satisfied by the petitioner's "credible testimony that he genuinely fears persecution." Singh v. Ilchert, 63 F.3d 1501, 1506 (9th Cir.1995) (hereinafter "Singh I "). "The objective element requires the applicant to show 'by credible, direct, and specific evidence in the record,' ... that persecution is a reasonable possibility.' " Singh II, 69 F.3d at 378 (citing Singh I, 63 F.3d at 1506).
 
 
 19
 The Board's denial of asylum must be upheld if supported by "reasonable, substantial, and probative evidence in the record." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Factual findings underlying the decision, including whether the alien has proved a well-founded fear of persecution, are reviewed for substantial evidence. Ghaly v. INS, 58 F.3d 1425, 1429 (9th Cir.1995). Under this deferential standard, the panel must apply "a slightly stricter scrutiny than the clear error standard." Shirazi-Parsa v. INS, 14 F.3d 1424, 1427 (9th Cir.1994).
 
 
 20
 Delfin contends that the Board denied her petition for asylum by relying on the only shred of evidence that did not support her claim, while ignoring the mountain of evidence that did. Specifically, Delfin protests the Board's reliance on the one-page opinion submitted by the Bureau of Human Rights and Humanitarian Affairs ("Bureau opinion"). The Bureau opinion stated "we have no information indicating that anyone associated with the Marcos regime is being persecuted by the Philippines Government." Delfin's claim is unfounded. It is beyond dispute that the Board is entitled to rely on a Bureau opinion in reviewing asylum claims. Ghaly, 58 F.3d at 1429 (citing Elnager v. INS, 930 F.2d 784, 789 (9th Cir.1991)).
 
 
 21
 Moreover, in its decision, the Board made reference to the testimony of the petitioner, the documentary evidence and the report from Delfin's expert, as well as the Bureau opinion. Aside from describing one newspaper article specifically, the Board did not indicate the extent of its review, nor the particular weight given to each piece of evidence. We recently held that the Board does not need to detail each piece of evidence submitted by the applicant, nor must it indicate the amount of weight each piece of evidence received. Ghaly, 58 F.3d at 1430. In Ghaly, the Board generally noted what evidence the applicant had provided, and specifically addressed certain evidence that seemed to be the most favorable to the petitioner. Id. That is exactly the method undertaken by the Board in this case. Accordingly, there is no basis to fault the Board's review of Delfin's claim.
 
 
 22
 Nonetheless, Delfin alleges that the evidence she provided to the Board shows a well-founded fear of persecution. It does not. To succeed on her appeal, her factual arguments must show a well-founded fear of persecution in the context of one of the five stated grounds for asylum: race, religion, nationality, membership in a particular social group or political opinion. See 8 U.S.C. § 1158(a).
 
 
 23
 Delfin argues that she will be persecuted because of her political opinion. Delfin admits that she was a supporter of the late President Ferdinand Marcos. Additionally, by virtue of her employment with the Araneta family, Delfin claims that pro-Marcos opinions will be imputed to her. See Singh I, 63 F.3d at 1508 (imputed political asylum is a valid basis upon which to grant asylum). However, Delfin did not present substantial evidence that the current Philippine government, or any faction, takes arbitrary actions against pro-Marcos loyalists simply by virtue of a political opinion. Accordingly, although her views are unpopular, they do not entitle her to asylum.
 
 
 24
 We also reject the notion that Delfin, as an employee of the Araneta household, is a member of a "social group" deserving of asylum. Delfin has submitted extensive evidence that her employers are well known, and despised, by many in the Philippines. She has also testified that she knows the habits of her employers, and their sons, and she knows their security system. Delfin theorizes that the information she possesses would be valuable to her employer's enemies.
 
 
 25
 Assuming that the employees of the Araneta household could be considered a "social group,"[5] Delfin has not provided substantial evidence that there is a reasonable possibility that this group would be subjected to persecution. The only individuals connected to the Araneta household in an employee-type relationship, who have been harmed as a result of their employment, were security guards stationed in the Philippines. The fate of the security guards do not in any way suggest the fate of Delfin upon her return to the Philippines. See Arriaga-Barrientos v. U.S. INS, 937 F.2d 411, 414 (9th Cir.1991) (acts against an applicant's friends or family members can establish a well-founded fear of persecution only where the violence is closely tied to the applicant, and the violence is more than just isolated). By her own admission she is a cook and housekeeper; she is not a trained security guard.
 
 
 26
 Delfin has provided no evidence that any harm has come to domestic servants of the Araneta household. Although it is not inconceivable that she will be questioned upon her return to the Philippines, there is nothing to suggest she will be persecuted. Thus, the Board's finding that Delfin is not entitled to asylum under 8 U.S.C. § 1158(a), is supported by substantial evidence. As Delfin did not show a well-founded fear of persecution, entitling her to discretionary asylum relief, she necessarily cannot show a clear probability of persecution under 8 U.S.C. § 1253(h), entitling her to withholding of deportation. See Arriaga-Barrientos, 937 F.2d at 413.
 
 
 27
 REVIEW DENIED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The Fourth Amendment's exclusionary rule does not apply to civil deportation proceedings, unless there was an "egregious" violation of the Fourth Amendment transgressing notions of fundamental fairness. INS v. Lopez-Mendoza, 468 U.S. 1032, 1050-51 (1984). Because of our holding that the taint of any Fourth Amendment violation in this case was purged, we do not reach Delfin's contention that the violation was "egregious."
 
 
 [2]
 The INS also argues that Delfin failed to make a prima facie showing of Fourth Amendment illegality before the IJ. Because we agree with the INS that the taint of any illegality was sufficiently purged, we need not reach the issue of Delfin's prima facie showing and assume arguendo that the search was illegal
 
 
 [3]
 We review for clear error the district court's factual findings regarding the voluntariness of a statement, but we review de novo the district court's ultimate conclusion that a statement was made voluntarily. United States v. Rambo, 74 F.3d 948, 953 (9th Cir.1996)
 
 
 [4]
 "[T]he civil rather than criminal nature of deportation proceedings renders the analysis of voluntariness in such situations markedly different.... In particular, because it is the alien's burden to show lawful entry, since he must answer non-incriminating questions, since his silence may be used against him, and since his statements are admissable despite lack of counsel, it is more likely than not that the alien will freely answer the government agent's questions." Cuevas-Ortega, 588 F.2d at 1277-78
 
 
 [5]
 See Aguilera-Cota v. U.S. INS, 914 F.2d 1375, 1380 n. 3 (9th Cir.1990) (suggesting that employees of a despised employer could constitute a social group within the scope of 8 U.S.C. § 1158(a))