141 F.3d 1175
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Anita Divinagracia DOMINGUITO, Petitioner,
v.
Immigration and Naturalization Service, Respondent.
 No. 96-70970.
I & NS No. Agi-god-irj.
 United States Court of Appeals,
Ninth Circuit.
 .
Argued and Submitted Feb. 6, 1998.
Decided Mar. 18, 1998.
 
 Petition to Review a Decision of the Immigration and Naturalization Service.
 Before FLETCHER, MAGILL,** and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Anita Divinagracia Dominguito, a citizen of the Phillippines, petitions for review of the decision of the Board of Immigration Appeals (BIA) denying her application for asylum and withholding of deportation under 8 U.S.C. §§ 1158(a) and 1253(h).[1] On appeal, Dominguito argues that the BIA erred in finding insufficient evidence of past persecution or a well-founded fear of future persecution on account of Dominguito's political opinion. Because the BIA's finding was supported by substantial evidence, we deny the petition for review.
 
 I.
 
 3
 Dominguito is a fifty-six-year-old native and citizen of the Phillippines, where she taught school and owned a variety store in the city of Davao. In 1989, members of the New People's Army (NPA), a communist guerrilla organization, began collecting a "revolutionary tax" from Dominguito and other local business owners as a means of extorting financial assistance for the NPA. Initially, the NPA demanded 2000 pesos per month, which Dominguito paid. The NPA soon increased its monthly demand to 5000 pesos. Dominguito refused to pay the inflated amount because she could no longer afford to do so. See Tr. at 11, reprinted in Pet'r's Excerpt of R. at 31 (Dominguito paid the NPA "a little bit, as far as [she] could afford, but ... [i]t was becoming bigger and bigger and [she] could not do anything."). In July 1990, NPA members visited Dominguito and insisted that she pay the 5000 peso monthly demand. Dominguito told the NPA members that "the amount that you're asking for is too big." Id. at 8, reprinted in Pet'r's Excerpt of R. at 28.
 
 
 4
 One week after this visit, a local NPA hideout was raided by the police. Dominguito received a death threat from the NPA accusing her of tipping the authorities as to the location of the NPA hideout. According to Dominguito's testimony, she promptly reported the letter to the police. See id. at 11-12, reprinted in Pet'r's Excerpt of R. at 31-32.
 
 
 5
 Fearing for her safety, Dominguito left her store in the care of relatives and moved to the town of Cebu, where she remained for seven months without being threatened or harmed. Dominguito then moved to Manila in March 1991 and remained there, again without being threatened or harmed, until she left the Philippines in September 1991. Although she intended to move to the United States permanently, Dominguito obtained a tourist visa that allowed her to remain in the United States only for a limited period. She entered the United States on September 28, 1991. Dominguito's husband, who remains in the Philippines, has subsequently told Dominguito that the NPA killed a Davao shop owner for informing the authorities of the NPA's activities.
 
 
 6
 Dominguito applied for asylum and withholding of deportation on December 16, 1993. At the conclusion of the deportation hearing held on January 5, 1996, the Immigration Judge (IJ) denied Dominguito's application and request for voluntary departure, based in part on an adverse credibility determination. The BIA reversed the IJ's credibility determination and denial of voluntary departure, but affirmed the denial of Dominguito's petition on the ground that Dominguito failed to establish that she had suffered past persecution or had a well-founded fear of future persecution on account of a protected ground. Dominguito now petitions this Court for review.
 
 II.
 
 7
 We will uphold the BIA's factual determination that an alien is not eligible for asylum if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4). "We will reverse the [BIA] only where the evidence is such that a reasonable factfinder would be compelled to conclude that the requisite fear of persecution existed." Ghaly v. INS, 58 F.3d 1425, 1429 (9th Cir.1995). To obtain reversal, Dominguito "must demonstrate that the evidence not only supports the conclusion that she suffered persecution or has a well-founded fear of persecution, but compels it." Fisher v. INS, 79 F.3d 955, 961 (9th Cir.1996) (en banc).
 
 
 8
 Under 8 U.S.C. § 1158(a), the Attorney General has discretion to grant an alien's request for asylum if the Attorney General determines that the alien is unable or unwilling to return to his or her native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (defining "refugee"). An applicant seeking asylum based on political opinion "must offer evidence that (1) he has been a victim of persecution or has a well-founded fear of persecution, (2) he holds a political opinion, (3) his political opinion is known to his persecutors, and (4) the persecution has been or will be on account of his political opinion." Vera-Valera v. INS, 123 F.3d 1302, 1304 (9th Cir.1997). The Supreme Court has explained that the phrase "persecution on account of political opinion" means "persecution on account of the victim's political opinion, not the persecutor's." INS v. Elias-Zacarias, 502 U.S. 478, 482, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). To meet the burden of demonstrating these elements, the applicant must establish a "causal connection" between the persecution and the political opinion, either through direct or circumstantial evidence. Sangha v. INS, 103 F.3d 1482, 1486-87 (9th Cir.1997).
 
 
 9
 Distinct from the discretion to grant asylum, the Attorney General is prohibited from deporting an alien to a country "if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1253(h)(1). To be eligible for such relief, an alien must prove "a clear probability of persecution." Arriaga-Barrientos v. INS, 937 F.2d 411, 413 (9th Cir.1991). This test is more exacting than the well-founded fear inquiry applicable to asylum requests, and "can be met only by showing that it is more likely than not that the alien will be persecuted if deported." Fisher, 79 F.3d at 961. "[F]ailure to satisfy the lesser standard of proof required to establish eligibility for asylum necessarily results in a failure to demonstrate eligibility for withholding of deportation as well." Ghaly, 58 F.3d at 1429.
 
 
 10
 We need not decide whether Dominguito has suffered or reasonably fears suffering persecution in the Philippines, because Dominguito has not presented compelling evidence that her alleged persecution was on account of her political opinion. Although Dominguito testified that she disagreed with the political objectives of the NPA, the record lacks any evidence of a causal link between Dominguito's political opinions, either actual or imputed, and the NPA's conduct towards her. Indeed, Dominguito never told the NPA that she was refusing to pay because she disagreed with the NPA's political objectives. Rather, she testified that she told NPA members that she was refusing to pay because "the amount that [they were] asking for is too big." Tr. at 8, reprinted in Pet'r's Excerpt of R. at 28. The BIA therefore reasonably concluded that the NPA's actions were taken on account of the NPA's desire to advance their extortion scheme, not on account of Dominguito's political views. Because the evidence in this case would not compel a reasonable factfinder to find persecution on account of Dominguito's political opinion, we must deny the petition for review.
 
 
 11
 Because Dominguito failed to prove persecution or a well-founded fear of persecution on account of any protected ground, both her asylum claim and her claim for withholding of deportation must fail. Accordingly, we deny her petition for review of the BIA's decision.
 
 
 12
 Petition for review DENIED.
 
 
 
 **
 Honorable Frank J. Magill, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 The recently amended judicial review procedures for deportation orders do not affect the disposition of this case. See Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104-208, § 309(c)(1)(A) & (B), 110 Stat. 3009-625 (enacted Sept. 30, 1996)