Reynaldo Olivera RAMOS; Dionisia B. Ramos; Rianna Jean B. Ramos; Rayjenald Joseph B. Ramos; Rachelli B. Ramos, Petitioners,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 01–70822.
I & NS Nos. A70–644–183 A70–644–184 A70–644–185 A70–644–186 A70–644–187.

United States Court of Appeals, Ninth Circuit.

Submitted May 9, 2002 *.

Decided May 22, 2002.

---

* The panel unanimously finds this case suitable for submission without oral argument pursuant to Fed. R.App. P. 34(a)(2).

Before LAY,** CANBY and PAEZ, Circuit Judges.

** The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit,

MEMORANDUM***

Reynaldo Olivera Ramos (and derivatively his wife and three children) appeals a final order of deportation entered on April 23, 2001, by the Board of Immigration Appeals ("BIA") upholding the decision of the Immigration Judge ("IJ"). In October 1995, in response to an Order to Show Cause issued by the Immigration and Naturalization Service ("INS"), Ramos conceded deportability and requested suspension of deportation, asylum, withholding of deportation, or in the alternative, voluntary departure. On March 26, 1996, after a hearing on the merits, the IJ denied the applications for suspension of deportation, asylum, and withholding of deportation, but granted the request for voluntary departure. The BIA affirmed the decision of the IJ in all respects. Ramos appeals only the denial of the application for asylum and withholding of deportation.[1]

Ramos and his wife entered the United States in 1988 for the purpose of attending a rice millers' conference in Colorado. Up until this time, Ramos worked as a rice miller on his aunt's property in the Philippines. While in Colorado, Ramos telephoned his aunt who informed him members of the New People's Army ("NPA")—evolutionary Communist group actively opposing the Philippine government—were looking for him. She told him not to return because his life would be in jeopardy. Ramos's children remained with their grandparents in Manila until they joined their parents in California in 1992.

Although at the first hearing Ramos testified that the NPA asked him for rice and money every month, he testified with an interpreter at the second hearing that the NPA asked him only twice for rice and money. The NPA apparently requested rice and money from Ramos because he had rice and money to give, not because of his actual or perceived political views. Ramos ultimately acquiesced to the NPA's demands because the members who approached him were armed and he was afraid. Ramos's aunt owned the mill and although she has since closed it down, she continues to live on the property.

Section 208(b) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158(b), gives the Attorney General discretion to grant asylum to aliens who are considered "refugees." A refugee is an alien who is unable or unwilling to return to his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion ...." INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). " 'Persecution' may be inflicted either by the government or by persons or organizations which the government is unable or unwilling to control." *Sangha v. INS*, 103 F.3d 1482, 1487 (9th Cir.1997). An applicant may qualify as a refugee solely by establishing past persecution on account of one of the authorized grounds because such a showing creates a rebuttable presumption the applicant has a well-founded

sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. This court's jurisdiction arises under former § 106(a)(1) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1105a(a)(1), as amended by § 309 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. 104–208, 110 Stat. 3009 (Sept. 30, 1996). Because the BIA disposed of this case after October 31, 1996, and these proceedings began prior to April 1, 1997, IIRIRA's transition rules govern this case. *See* IIRIRA § 309(c)(4); *Kalaw v. INS*, 133 F.3d 1147, 1149–50 (9th Cir.1997).

fear of future persecution. *See* 8 C.F.R. § 208.13(b)(1)(i). The applicant may also qualify as a refugee by demonstrating he has a well-founded fear of future persecution on account of one of the authorized grounds. *See Duarte de Guinac v. INS,* 179 F.3d 1156, 1159 (9th Cir.1999); 8 C.F.R. § 208.13(b)(2). This requires a showing that the applicant has a genuine fear of future persecution and that a reasonable person in the applicant's circumstances would fear persecution if returned to his native country. *See Elnager v. INS,* 930 F.2d 784, 786 (9th Cir.1991). Withholding of deportation is mandatory if the applicant establishes a "clear probability of persecution" on account of one of the enumerated grounds if the applicant were returned to his native country. *INS v. Stevic,* 467 U.S. 407, 430, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984); INA § 243(h), 8 U.S.C. § 1253(h) (repealed 1996, but still governing cases subject to the transitional rules, see IIRIRA § 309(c)(1), (4)). It is more difficult to satisfy the "clear probability of persecution" standard than it is to qualify for asylum. *See INS v. Cardoza–Fonseca,* 480 U.S. 421, 440–41, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). Therefore, failure to qualify for asylum forecloses withholding of deportation.

■ The BIA concluded Ramos did not qualify for asylum for two reasons. First, the BIA found the NPA's extortion was "entirely economic in nature" and therefore did not constitute "persecution" within the meaning of the INA. In addition, the BIA did not find any reason to believe the NPA would still be interested in Ramos or his family if he returned to the Philippines.[2] We will uphold the BIA's factual determinations, including determination of ineligibility for asylum, "if supported by reasonable, substantial, and probative evi-

dence ...." 8 U.S.C. § 1105a(a)(4) (repealed 1996, but still governing cases subject to the transitional rules, see IIRIRA § 309(c)(1), (4)). Under this "substantial evidence" standard, reversal requires finding the applicant's evidence "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *INS v. Elias–Zacarias,* 502 U.S. 478, 484, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

Ramos takes issue with the BIA's conclusion that the extortion he suffered at the hands of the NPA was entirely economically motivated. Ramos argues there is sufficient record evidence to show the past persecution he suffered "was motivated, at least in part, by an actual or imputed protected ground." *Matter of T–M–B,* 21 I. & N. Dec. 775, 777 (BIA 1997). Ramos concedes the NPA's initial motive in demanding rice and money may have been economic. He contends, however, the subsequent motivation for his persecution was political in nature because the NPA would likely equate his refusal to support the group's economic needs with a refusal to support its political agenda. In support of this proposition, Ramos relies on this court's decisions in *Borja v. INS,* 175 F.3d 732 (9th Cir.1999) (en banc), and *Tarubac v. INS,* 182 F.3d 1114 (9th Cir. 1999).

Given the facts before us, *Borja* and *Tarubac* are insufficient to support Ramos's claim of imputed political opinion. In *Borja,* the asylum seeker refused, because of her expressed political views, NPA members' invitation to join their organization and appeased them by paying the revolutionary taxes they demanded. 175 F.3d at 734–35. When she eventually refused to continue paying, and again expressed her political views, she was beat-

---

**2.** Though not explicitly stated, we presume the BIA, through this finding, concluded Ra- mos did not prove a well-founded fear of future persecution.

en. *Id.* Similarly, in *Tarubac* we did not find it necessary to decide whether the NPA imputes a political opinion to someone refusing to pay the revolutionary tax because "Tarubac not only resisted the NPA's demands but expressed political reasons for her resistance ...." 182 F.3d at 1119. Thus, we understood the NPA's subsequent persecution "as being on account of her political opinion." *Id.* In the present case, however, the NPA made no attempt to recruit Ramos, nor did Ramos express his political opposition to the NPA.[3] The record evidence is insufficient to establish his persecutors "actually imputed" a political opinion to him. *See Sangha*, 103 F.3d at 1489 ("To establish an imputed political opinion, the applicant must show that his persecutors actually imputed a political opinion to him."). It is certainly insufficient to warrant reversal of the BIA's decision. *See Fisher v. INS*, 79 F.3d 955, 961 (9th Cir.1996) (en banc) (noting that on appeal the applicant must not only establish the evidence supports her position, "but compels it").

■ Moreover, Ramos fails to adequately challenge the BIA's finding that the NPA's two extortion incidents did not constitute "persecution" or give rise to a "well-founded fear of future persecution." Rather, Ramos's brief is focused on the question of whether the persecution he suffered was "on account of" his political opinion. We concede the BIA's discussion of the issue is brief, and seemingly conflates the two requirements. Nonetheless, we agree with the INS that Ramos has failed to prove he has a legitimate fear of future persecution or that he ever suffered past persecution at the hands of the NPA.

Even if the NPA's past extortionate demands were on account of Ramos's political beliefs, they hardly constitute "the *infliction of suffering or harm* upon those who differ ... in a way regarded as offensive." *Ghaly v. INS*, 58 F.3d 1425, 1431 (9th Cir.1995) (emphasis added) (cautioning persecution "does not include every sort of treatment our society regards as offensive") (citations omitted). Ramos also presents insufficient evidence to support a finding that he has a well-founded fear of future persecution. Although his own testimony is sufficient to satisfy the subjective element of the well-founded fear of persecution requirement, Ramos has offered nothing to warrant a finding that a reasonable person in his situation would fear persecution upon returning to the Philippines. *See id.* at 1428 (explaining the objective component requires "credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution") (quoting *Arriaga–Barrientos v. INS*, 925 F.2d 1177, 1178–79 (9th Cir.1991)). The mill Ramos worked at is closed now; his aunt still lives on the property and there is no evidence she has been threatened or harmed since Ramos departed. In addition, there is no evidence to suggest that Ramos and his family would not be safe if they relocated elsewhere in the Philippines. *See Quintanilla–Ticas v. INS*, 783 F.2d 955, 957 (9th Cir.1986) (no well-founded fear of persecution when applicant can safely relocate within his home country).

Accordingly, we hold there is sufficient record evidence to support the BIA's conclusion that Ramos has not suffered past persecution, or established a well-founded

---

**3.** We also find little, if any, support for Ramos's claim that he cut off his support of the NPA's economic needs. Although it is factually accurate to say Ramos ceased payments to the NPA when he left the Philippines, there is no evidence he resisted the demands while there or that his move to the United States was perceived by the NPA as an attempt to avoid paying revolutionary taxes.

fear of future persecution, on account of his political opinion.

PETITION DENIED.